**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
Brittany S. Scott (State Bar No. 327132)
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-mail: ltfisher@bursor.com
bscott@bursor.com

**BURSOR & FISHER, P.A.**
Philip L. Fraietta (State Bar No. 354768)
1330 Avenue of the Americas, 32nd Floor
New York, NY 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
E-mail: pfraietta@bursor.com

*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

KENTOYA MITCHELL, individually and on behalf of all others similarly situated,

Plaintiff,

v.

SONESTA INTERNATIONAL HOTELS CORPORATION,

Defendant.

Case No. 2:24-cv-02603-GW-SSC

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**

Date: October 7, 2024
Time: 11:30 AM
Courtroom: 9D, 9th Floor
Judge: Hon. George H. Wu

## TABLE OF CONTENTS

**PAGE(S)**

INTRODUCTION ........ 1

ARGUMENT ........ 2

I. PLAINTIFF HAS ARTICLE III STANDING ........ 2

II. PLAINTIFF DID NOT CONSENT TO THE THIRD PARTIES' WIRETAPPING ........ 3

III. PLAINTIFF'S CLAIMS ARE TIMELY ........ 8

IV. PLAINTIFF STATES A CLAIM UNDER CIPA § 631 ........ 9

A. The Party Exception Does Not Apply ........ 9

B. Plaintiff Alleges that Sonesta Violated the Fourth Prong of CIPA § 631(a) ........ 12

C. Plaintiff Alleges Interception "In Transit" ........ 13

D. Plaintiff Alleges that Sonesta "Aided, Agreed With, Employed, and Conspired With" the Third Parties ........ 15

V. PLAINTIFF STATES A CLAIM UNDER CIPA § 632 ........ 17

A. Plaintiff Alleges Eavesdropping ........ 17

B. Plaintiff Had an Objectively Reasonable Expectation of Privacy ........ 18

C. The Tracking Technologies are Electronic Amplifying or Recording Devices ........ 20

CONCLUSION ........ 22

## TABLE OF AUTHORITIES

**PAGE(S)**

**CASES**

*Adler v. Community.com, Inc.*,
2021 WL 4805435 (C.D. Cal. Aug. 2, 2021) ..... 14

*Augustine v. Lenovo (United States), Inc.*,
2023 WL 4938050 (S.D. Cal. 2023) ..... 9

*Balanzar v. Fid. Brokerage Servs., LLC*,
654 F. Supp. 3d 1075 (S.D. Cal. 2023) ..... 6

*Balletto v. Am. Honda Motor Co.*,
2023 WL 7026931 (N.D. Cal. Oct. 24, 2023) ..... 10, 11

*Balletto v. Am. Honda Motor Co.*,
2024 WL 589090 (N.D. Cal. Feb. 13, 2024) ..... 11, 12

*Berman v. Freedom Financial Network, LLC*,
30 F.4th 849 (9th Cir. 2022) ..... 7

*Bernstein v. United Collection Bureau, Inc.*,
2013 WL 5945056 (S.D. Cal. 2013) ..... 19

*Brown v. Google LLC*,
685 F. Supp. 3d 909 (N.D. Cal. 2023) ..... 18

*Byars v. Goodyear Tire & Rubber Co.*,
654 F. Supp. 3d 1020 (C.D. Cal. 2023) ..... 14

*Calhoun v. Google, LLC*,
2024 WL 3869446 (9th Cir. 2024) ..... 3, 4, 5

*Cody v. Ring LLC*,
2024 WL 735667 (N.D. Cal. 2024) ..... 11

*Cousin v. Sharp Healthcare*,
681 F. Supp. 3d 1117 (S.D. Cal. 2023) ..... 14, 15, 16

*D'Angelo v. Penny OpCo, LLC*,
2023 WL 7006793 (S.D. Cal. Oct. 24, 2023) ..... 14

*Doe v. Meta Platforms, Inc.*,
690 F. Supp. 3d 1064 (N.D. Cal. 2023) ........................................................................20

*Doe v. Microsoft Corp.*,
2023 WL 8780879 (W.D. Wash. Dec. 19, 2023).............................................................20

*Eidson v. Medtronic, Inc.*,
40 F. Supp. 3d 1202 (N.D. Cal. 2014) ..............................................................................9

*Esparza v. Kohl's, Inc.*,
2024 WL 1152732 (S.D. Cal. 2024) ..................................................................................6

*Ewing v. Flora*,
2015 WL 12564225 (S.D. Cal. 2015) ..............................................................................19

*Fan v. NBA Properties Inc.*,
2024 WL 1297643 (N.D. Cal. 2024)...................................................................................3

*Fox v. Ethicon Endo-Surgery, Inc.*,
35 Cal. 4th 797 (2005).........................................................................................................9

*Franklin v. Ocwen Loan Servicing, LLC*,
2018 WL 5923450 (N.D. Cal. Nov. 13, 2018).....................................................................8

*Gerritsen v. Warner Bros. Ent.*,
112 F.Supp.3d 1011 (N.D. Cal. 2015) ............................................................................13

*Gladstone v. Amazon Web Servs., Inc.*,
2024 WL 3276490 (W.D. Wash. July 2, 2024) ...........................................passim

*Goldstein v. Fandango Media, LLC*,
2021 WL 6617447 (S.D. Fla. July 27, 2021).......................................................................7

*Graham v. Noom, Inc.*,
533 F. Supp. 3d 823 (N.D. Cal. 2021) ...............................................................................9

*Gray v. Amazon.com Inc.*,
2024 WL 2206454 (9th Cir. 2024)......................................................................................7

*Healthcare Litig.*,
647 F. Supp. 3d 778 (N.D. Cal. 2022) .........................................................................18, 19

*Heerde v. Learfield Commc'ns, LLC*,
2024 WL 3573874 (C.D. Cal. 2024).................................................................................14

*Hightower v. Celestron Acquisition, LLC*,
2021 WL 2224148 (N.D. Cal. June 2, 2021) .......... 9

*Hilfiker Square, LLC v. Thrifty Payless, Inc.*,
2016 WL 7031283 (D. Or. 2016) .......... 3

*In re Carrier IQ*,
78 F. Supp. 3d, 1051 (N.D. Cal. 2015) .......... 20

*In re Cell Tower Litig.*,
2012 WL 1903883 (S.D. Cal. May 24, 2012) .......... 15

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020) .......... 14

*In re Google Location Hist. Litig.*,
428 F. Supp. 3d 185 (N.D. Cal. 2019) .......... 20

*James v. Walt Disney Co.*,
701 F. Supp. 3d 942 (N.D. Cal. 2023) .......... 21

*Javier v. Assurance IQ, LLC*,
649 F. Supp. 3d 891 (N.D. Cal. 2023) .......... 8, 10, 11

*Javier v. Assurance IQ, LLC*,
2022 WL 1744107 (9th Cir. 2022) .......... 7

*Lindsay-Stern v. Garamszegi*,
2016 WL 11745948 (C.D. Cal. Oct. 13, 2016) .......... 15

*Matera v. Google Inc.*,
2016 WL 8200619 (N.D. Cal. Aug. 12, 2016) .......... 21

*McCoy v. Alphabet, Inc.*,
2021 WL 405816 (N.D. Cal. 2021) .......... 3

*Mirkarimi v. Nevada Prop. 1 LLC*,
2013 WL 3761530 (S.D. Cal. July 15, 2013) .......... 18

*Moreno v. San Francisco Bay Area Rapid Transit Dist.*,
2017 WL 6387764 (N.D. Cal. 2017) .......... 20

*Reese v. BP Exploration (Alaska) Inc.*,
643 F.3d 681 (9th Cir. 2011) .......... 2

*Revitch v. New Moosejaw, LLC*,
2019 WL 5485330 (N.D. Cal. Oct. 23, 2019)....................13, 14, 16

*Ribas v. Clark*,
38 Cal. 3d 355 (1985)....................10, 11, 13, 17

*Rodriguez v. Ford Motor Co.*,
2024 WL 1223485 (S.D. Cal. Mar. 21, 2024)....................16, 17, 21

*Smith v. Facebook, Inc.*,
262 F. Supp. 3d 943 (N.D. Cal. 2017)....................7

*Smith v. Google, LLC*,
2024 WL 2808270 (N.D. Cal. June 3, 2024)....................19

*Tavernetti v. Superior Ct.*,
22 Cal. 3d 187 (1978)....................10

*Turner v. Nuance Commc'ns, Inc.*,
2024 WL 2750017 (N.D. Cal. 2024)....................3, 10, 11, 12

*United States v. Hutchins*,
361 F. Supp. 3d 779 (E.D. Wis. 2019)....................20

*Vaccaro v. Altais*,
2023 WL 7003211 (C.D. Cal. Oct. 23, 2023)....................17

*Valenzuela v. Keurig Green Mountain, Inc.*,
674 F. Supp. 3d 751 (N.D. Cal. 2023)....................6

*Valenzuela v. Nationwide Mut. Ins. Co.*,
686 F. Supp. 3d 969 (C.D. Cal. 2023)....................10, 11, 14

*Valenzuela v. Super Bright LEDs Inc.*,
2023 WL 8424472 (C.D. Cal. 2023)....................9, 11

*Vera v. O'Keefe*,
791 F. Supp. 2d 959 (S.D. Cal. 2011)....................2, 17, 18

*Yockey v. Salesforce, Inc.*,
688 F. Supp. 3d 962 (N.D. Cal. 2023)....................10, 11

*Yoon v. Lululemon USA, Inc.*,
549 F. Supp. 3d 1073 (C.D. Cal. 2021)....................9, 11

**STATUTES**

Cal. Civil Code § 53.5 ....................................................................................passim

Cal. Civil Code § 53.5(a).....................................................................................19

Cal. Civil Code § 53.5(c).....................................................................................19

Cal. Civil Code § 53.5(f) .....................................................................................19

Cal. Penal Code § 31......................................................................................17, 18

Cal. Penal Code § 631 ..............................................................................13, 16, 17

Cal. Penal Code § 631(a)...........................................................................13, 15, 16

## INTRODUCTION

Plaintiff Kentoya Mitchell ("Plaintiff") alleges Defendant Sonesta International Hotels Corporation ("Sonesta" or "Defendant") violated the California Invasion of Privacy Act ("CIPA") §§ 631-632 by aiding, agreeing with, employing, permitting, or otherwise enabling Google LLC ("Google"), Hotjar Ltd. ("Hotjar"), and Koddi Inc. ("Koddi") (collectively, the "Third Parties") to wiretap communications sent and received on Defendant's website, sonesta.com (the "Website"). *See* First Amended Complaint (ECF No. 18) ("FAC") ¶¶ 84-108. This wiretapping was done without the knowledge and consent of Plaintiff and Class Members (*id.* ¶¶ 2-3, 25, 39-42, 69-75, 90, 93, 107), and it comprised communications of sensitive and confidential "guest records," as defined by Cal. Civil Code § 53.5. *Id.* ¶¶ 19-21; 102-104. Now, Defendant moves to dismiss. *See* Motion to Dismiss (ECF No. 26) ("MTD").

***First***, Defendant argues that "Plaintiff's [c]onsent [n]egates the [p]ossibility of [i]njury or [c]ausation." MTD at 10. But Defendant's privacy disclosures are insufficient to obtain consent.

***Second***, Defendant argues that Plaintiff's claims are time-barred. MTD at 12-13. But the delayed discovery rule applies to the wiretapping at issue here.

***Third***, Defendant argues that Plaintiff fails to allege a violation of CIPA § 631 for three reasons (1) the party exemption; (2) failure to allege interception in transit, (3) and failure to allege aiding and abetting. MTD at 15-20. Each of these arguments fails. There is no party exemption to 631. Plaintiff does plausibly allege that her communications were intercepted in transit. And, prong four of CIPA § 631(a) is not limited to aiding and abetting.

***Fourth***, Defendant argues that Plaintiff fails to allege a violation of CIPA § 632 because Plaintiff does not allege (1) "unlawful eavesdropping or recording," (2) Plaintiff's communications were not confidential; and (3) the tracking technologies are not electronic amplifying or recording devices. MTD at 20-23. Not so.

Defendant is vicariously liable for the Third Parties' wiretapping. *See, e.g.*, *Vera v. O'Keefe*, 791 F. Supp. 2d 959, 965 (S.D. Cal. 2011). Further, Plaintiff's communications are "confidential" because Cal. Civil Code § 53.5 mandates that "guest records" are confidential. Finally, Defendant's assertion that the Third Parties' trackers "are not [e]lectronic [a]mplifying or [r]recording [d]evices" (MTD at 23) defies the majority of courts that have considered this issue.

Thus, Defendant's Motion to Dismiss should be denied.

## ARGUMENT

### I. PLAINTIFF HAS ARTICLE III STANDING

Defendant contends that "Sonesta did not use Quantum Metric, Sentry, or CartStack on its website" and therefore Plaintiff "lacks Article III standing[.]" MTD at 10. However, Plaintiff also alleges that Defendant aided, employed, agreed with, or otherwise enabled the wiretaps of Google, Hotjar, and Koddi. *See* FAC ¶¶ 30-32, 35-36, 42-44, 47, 49-51, 54-60.

The Martini Declaration cursorily discusses Hotjar: "In April and May of 2023, the Hotjar tool on the Website was not configured to track most personal information[ and ] would have redacted names, email addresses, and credit card information." Martini Decl. ¶ 20. But this contravenes Plaintiff's allegations (FAC ¶¶ 20, 103), is not substantiated by any evidence, and thus raises questions that must be resolved on a fuller factual record. *See Reese v. BP Exploration (Alaska) Inc.*, 643 F.3d 681, 690 (9th Cir. 2011). Moreover, Defendant does not address Hotjar's interception of Plaintiff's hotel booking details—which Plaintiff has Article III standing to challenge. *See* FAC ¶¶ 20-21, 27-29.

Finally, Defendant attempts to escape liability by relying on certain privacy disclosures. *See id.* ¶ 20 ("Sonesta used … [the] Google and Koddi[] tools … as disclosed in the Privacy Statement."). This argument fails because Plaintiff did not consent to the Third Parties' wiretapping. *See infra* § II.

## II. PLAINTIFF DID NOT CONSENT TO THE THIRD PARTIES' WIRETAPPING

Defendant argues that because Plaintiff consented to the wiretapping she lacks standing and cannot state a CIPA claim. MTD at 10-11, 13-15. Per Sonesta, Plaintiff agreed to two Sonesta policies: the "Travel Pass Terms of Service" and the Sonesta "Privacy Statement." *Id.*; *see also id.* at 5-8. Defendant contends that these two policies "outline the precise conduct at issue here." MTD at 11. But Defendant's disclosures did **not** put Plaintiff or other reasonable consumers on notice of its conduct.

What a reasonable consumer would believe if they were on notice of the (conflicting) privacy statements at issue cannot be determined at this stage. *See*, *e.g.*, *Fan v. NBA Properties Inc.*, 2024 WL 1297643, at *3 (N.D. Cal. 2024) ("[w]hether reasonable consumers would understand, based on the … Terms of Use or … Privacy Policy, that by using the … website they were consenting to the disclosure of their personally identifiable information … is a question that should be resolved on a fuller factual record."); *Hilfiker Square, LLC v. Thrifty Payless, Inc.*, 2016 WL 7031283, at *3 (D. Or. 2016); *Turner v. Nuance Commc'ns, Inc.*, 2024 WL 2750017, at *7 (N.D. Cal. 2024); *McCoy v. Alphabet, Inc.*, 2021 WL 405816, at *6 (N.D. Cal. 2021).

Here, there is at least a question of fact as to "whether the circumstances, considered as a whole, demonstrate that a reasonable person understood that [the wiretapping] would be carried out[.]" *Calhoun v. Google, LLC*, 2024 WL 3869446, at *5 (9th Cir. 2024); *see generally* FAC ¶¶ 69-75 (alleging lack of consent). For one, the Travel Pass Terms of Service hardly even discuss privacy and simply state: "you may review the Sonesta Privacy Policy on Sonesta.com[]" (Martini Decl., Exh. B) and "Members also authorize Sonesta to share your Account Information … in order to service your Member Account and to facilitate the booking and processing of reservations." *Id.* When defining "What Personal Data We Collect," Sonesta lists "[a]ccount information, such as username and password[.]" *Id.*

However, the intercepted communications were not mere "account information" and rather stemmed from Website users' interactions with Website pages, form fields, and buttons entirely unrelated to the Sonesta Travel Pass loyalty program. FAC ¶¶ 20-21, 27-29. Further, the communications at issue were not used by the Third Parties merely for account servicing and to facilitate booking and processing reservations. Rather, the communications were wiretapped for the Third Parties' respective own uses. *Id.* ¶¶ 61-68. And the communications were not merely shared; they were surreptitiously intercepted in real time. *Id.* ¶¶ 27-32, 35, 49-51, 54-60, 90. Therefore, the Travel Pass Terms of Service fell woefully short of "outlin[ing] the precise conduct at issue here." MTD at 11.

The Privacy Statement is no better. Defendant relies on a portion providing:

> **We** collect other data using cookies and related data collection technologies [such as session replay and analytics tools] to provide **our** Online Services engage in Marketing Activities, gather information when users navigate through **our** websites to enhance and personalize the experience, to understand usage patterns, and to improve **our** websites, products, and Services.

*Id.* (emphasis added); *see also id.* at 14-15. But this only delineates how **Sonesta** collects and uses information, and Website "user[s] could have plausibly understood the disclosures as *not* disclosing that [others] would engage in [the] particular conduct [at issue.]" *Calhoun*, 2024 WL 3869446, at *5 (emphasis in original). Nowhere does the above excerpt disclose how Defendant aided, employed, agreed with, or otherwise enabled the **Third Parties** to intercept users' Website communications (FAC ¶¶ 2-3, 23, 25, 42-44, 54-69, 91-92, 105-107), nor does it disclose how the **Third Parties** were able to use that information for their own purposes. *Id.* ¶¶ 61-68.

Eventually, the Privacy Statement states: "[w]e also allow third parties to use Cookies on our Online Services to collect information about your online activities

over time and across different websites you visit. This information is used to provide advertising[.]" *See* Martini Decl., Exh. B ("Cookies Notice"). But "a determination of what a 'reasonable' user would have understood must take into account the level of sophistication attributable to the general public, which uses [Defendant's Website,]" and not that of "an experienced business lawyer or someone who is able to easily ferret through a labyrinth of legal jargon[.]" *Calhoun*, 2024 WL 3869446, at *9. When Defendant tells the general public that it allows third parties to "collect information about your online activities[,]" the general public would not understand that to mean Defendant allowed the Third Parties to engage in tracking so precise and pervasive as to be like "someone [] looking over you shoulder[.]" FAC ¶ 31; *see also id.* ¶¶ 20-21, 40-41, 47-60, 103-104. Indeed, "collect[ing]" (i.e., "gather[ing] an accumulation of (objects) especially as a hobby"[1]) is very different from "watch[ing] and record[ing] a visitor's every move on a website, in real time." *Id.* ¶ 31 (cleaned up). And saying, "information is used to provide advertising" does not clarify that Third Parties could use the data for their own ill-defined, independent purposes beyond just "advertising." *Id.* ¶¶ 61-68.

Moreover, Defendant offered several warrantees that it did not make such disclosures. For example, in a section titled "To Whom We Disclose Personal Data for a Business Purpose," Sonesta states that: "Unless otherwise precluded or governed by legal requirements, we do not grant permission to any … third-party service providers that may receive your information to use such information independent of use in connection with our products and services, consistent with this policy." Sonesta further states: "Except for the disclosure noted above … and except as disclosed below, our practice is to not provide access to, sell, rent, or otherwise give physical possession of your personal data to other parties." And in a section titled "When We Disclose Your Personal Data," Sonesta explains that it "disclose[s]

[1] *Collect*, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/collect.

your personal data, any communications sent to or received from you, and other information that we may have relating to you" only "[w]hen we have received your **consent** to do so[.]" Martini Decl., Exh. B (emphasis added).

Thus, Sonesta's policies did not disclose or receive consent for the wiretaps. Minimally, Plaintiff's allegations raise questions of fact concerning the same. That is sufficient at this stage. *See, e.g.*, *Valenzuela v. Keurig Green Mountain, Inc.*, 674 F. Supp. 3d 751, 756-57 (N.D. Cal. 2023) ("Plaintiff alleges she was not informed her conversations were being recorded, intercepted, or eavesdropped upon, and did not consent to monitoring by the third-party when she communicated with Defendant. That is sufficient at this stage."); *Esparza v. Kohl's, Inc.*, 2024 WL 1152732, at *3 (S.D. Cal. 2024); *Balanzar v. Fid. Brokerage Servs., LLC*, 654 F. Supp. 3d 1075, 1081 (S.D. Cal. 2023).

Second, Defendant is wrong that Plaintiff "proactively and repeatedly agreed to the Privacy Statement before booking her room[]" (MTD at 10) including "when she created a Travel Pass account[.]" *Id.* at 14. The "Join Travel Pass" page of Defendant's Website is pictured in ¶ 72 of the FAC:




As shown, the hyperlinks to the Sonesta Travel Pass Terms of Service and Privacy Statement are "printed in a tiny [] font considerably smaller than the font used in the

surrounding website elements" (*Berman v. Freedom Financial Network, LLC*, 30 F.4th 849, 856 (9th Cir. 2022))—including the Travel Pass description to the left and the text fields and buttons throughout. Indeed, "the textual notice is [] deemphasized by the overall design of the webpage, in which other visual elements draw the user's attention away from the barely readable critical text." *Id*. at 857. Moreover, the "Terms of Service" and "Privacy Statement" links are underlined but not otherwise conspicuously denoted (i.e., through font of a different color, size, etc.), and "[s]imply underscoring words or phrases, as in the webpages at issue here, will often be insufficient to alert a reasonably prudent user that a clickable link exists." *Id*. And whereas the hyperlinks in *Berman* were above large "Continue" buttons, the hyperlinks here are below a "Create Account" button. *Compare id.* at 859-61 (Appendix A and B); *with supra*. Collectively, this diminishes notice beyond what *Berman* allows. *See also Goldstein v. Fandango Media, LLC*, 2021 WL 6617447, at *3 (S.D. Fla. 2021). Thus, Plaintiff was not on constructive notice of the privacy disclosures when joining the Sonesta Travel Pass loyalty program in April 2023 (prior to making her reservation).[2]

Finally, Defendant attaches the "checkbox disclosure" presented to Plaintiff "[a]t the end of the booking process[.]" MTD at 9. But Defendant submits no evidence that Plaintiff was required to (or did in fact) manifest assent thereto, prior to being wiretapped earlier in the booking process. *See Javier v. Assurance IQ, LLC*, 2022 WL 1744107, at *2 (9th Cir. 2022) ("[W]e conclude that the California Supreme Court would interpret Section 631(a) to require the **prior consent** of all parties to the communication.") (emphasis added). To the contrary, Plaintiff alleges

[2] This is distinguishable from Defendant's authorities. MTD at 14. There, "Plaintiffs [actually] agreed to several Facebook policies when they signed up for accounts[,]" *Smith v. Facebook, Inc.*, 262 F. Supp. 3d 943, 953 (N.D. Cal. 2017), and "Plaintiffs d[id] not challenge the district court's finding that they accepted and [we]re bound by the Alexa Terms of Use[.]" *Gray v. Amazon.com Inc.*, 2024 WL 2206454, at *1 (9th Cir. 2024).

that by "the checkout stage of the booking process[,] … [users] will have already been wiretapped by the Third Parties, prior to their being so much as asked" for consent (FAC ¶ 72) because "Cookies are turned on by default, even before a Website user selects Accept or Confirm." *Id.* ¶ 73.

## III. PLAINTIFF'S CLAIMS ARE TIMELY

Defendant contends Plaintiff's CIPA claims fail are untimely. MTD at 12-13. Not so. "Under California's delayed discovery rule, the statute of limitations does not start to run until the plaintiff discovers, or has reason to discover, the cause of action." *Franklin v. Ocwen Loan Servicing, LLC*, 2018 WL 5923450, at *3 (N.D. Cal. Nov. 13, 2018); *Javier v. Assurance IQ, LLC*, 649 F. Supp. 3d 891 (N.D. Cal. 2023) (same). "To utilize the delayed discovery rule, the plaintiff 'must specifically plead facts to show (1) the time and manner of discovery and (2) the inability to have made earlier discovery despite reasonable diligence.'" *Franklin*, 2018 WL 5923450, at *3. These factors can be met where "[t]he very nature of plaintiff's allegations is that the recordings were done surreptitiously." *Id.*

Here, Plaintiff's claims are timely because she alleges Defendant's CIPA wiretapping was carried out surreptitiously and without her consent. *See e.g.* FAC ¶¶ 2-3, 25, 39-42, 69-75, 90, 93, 107. Thus, "[d]rawing all inferences in favor of the [P]laintiff, and [given] that resolution of this question is typically one of fact, … [P]laintiff has alleged sufficient facts to avail h[er]self of California's delayed discovery rule," and Plaintiff's claim is timely. *Franklin*, 2018 WL 5923450 at *3. Still, Defendant argues that "Plaintiff has been on notice of the practices at issue since the very beginning of the limitations period[,] [i]n [l]ight of the numerous disclosures discussed above[.]" MTD at 12. But as discussed *supra* § II, the disclosures were deficient.

Defendant's arguments that "Plaintiff [] could have [] seen the software" and "had counsel for much of the limitations period" are also unavailing. MTD at 12. "[P]laintiffs are required to conduct a reasonable investigation **after** becoming aware

of an injury, and are charged with knowledge of the information that would have been revealed by such an investigation." *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 808 (2005) (emphasis added). That information is potentially available to a plaintiff does not defeat the delayed discovery rule if the plaintiff was unaware of an injury or violation. *See Eidson v. Medtronic, Inc.*, 40 F. Supp. 3d 1202, 1221-22 (N.D. Cal. 2014) (collecting authorities); *Hightower v. Celestron Acquisition, LLC*, 2021 WL 2224148, at *9 (N.D. Cal. June 2, 2021). *Eidson*, for example, rejected the argument that a review of the plaintiff's records "would have revealed the wrongdoing," thereby defeating the delayed discovery rule, because it was plausible "that a reasonable person would not see a need to request or inspect his [ ] records" under the circumstances. *Eidson*, 40 F. Supp. 3d at 1219. The same is true here because Plaintiff was unaware of the Third Parties' wiretaps. *See* FAC ¶ 25.

## IV. PLAINTIFF STATES A CLAIM UNDER CIPA § 631

### A. The Party Exception Does Not Apply

Defendant argues that the party exemption applies here because the Third Parties merely provide "tools used by Sonesta[,] … agents operating at Sonesta's behest[, or] … an extension of Sonesta[.]" MTD at 17. But whether Google, Hotjar, and Koddi are independent third parties, as Plaintiff alleges, or merely passive tools is a "question of fact for a jury, best answered after discovery[.]" *Yoon v. Lululemon USA, Inc.*, 549 F. Supp. 3d 1073, 1081 (C.D. Cal. 2021); *see also Augustine v. Lenovo (United States), Inc.*, 2023 WL 4938050, at *3 (S.D. Cal. 2023). As such, the Court should not decide this issue at the pleading stage. *See Valenzuela v. Super Bright LEDs Inc.*, 2023 WL 8424472, at *4-6 (C.D. Cal. 2023).

In any event, Defendant's argument is meritless. Defendant relies on *Graham v. Noom, Inc.*, 533 F. Supp. 3d 823, 832 (N.D. Cal. 2021) to support its argument. But "*Graham* and its progeny are based on a misinterpretation of Section 631 and *Ribas*, both of which compel the conclusion that the third party's intentions with respect to the **use** of the collected information are irrelevant." *Yockey v. Salesforce,*

*Inc.*, 688 F. Supp. 3d 962, 972 (N.D. Cal. 2023) (emphasis added) (citing *Ribas v. Clark*, 38 Cal. 3d 355 (1985), a seminal and controlling California Supreme Court decision that Defendant fails to mention); *see also*, *e.g.*, *Javier v. Assurance IQ, LLC*, 649 F. Supp. 3d 891, 900 (N.D. Cal. 2023) (rejecting *Graham*); *Balletto v. Am. Honda Motor Co.*, 2023 WL 7026931, at *2 (N.D. Cal. Oct. 24, 2023) (same); *Gladstone v. Amazon Web Servs., Inc.*, 2024 WL 3276490, at *6 (W.D. Wash. July 2, 2024) (same); *Turner*, 2024 WL 2750017, at *10 (same); *Valenzuela v. Nationwide Mut. Ins. Co.*, 686 F. Supp. 3d 969, 980 (C.D. Cal. 2023) (same).

In short, *Graham* "read[s] a use requirement into the second prong[ of CIPA § 631(a), ] add[ing] requirements that are not present (and swallow[ing] the third prong in the process)." *Javier*, 649 F. Supp. 3d at 900 (discussing prong two of CIPA § 631(a), concerning "… read[ing], or attempt[ing] to read, or to learn the contents or meaning of any message …" and prong three of CIPA § 631(a), concerning "us[ing], or attempt[ing] to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained."); *see also Tavernetti v. Superior Ct.*, 22 Cal. 3d 187, 192-93 (1978) (CIPA § 631(a) imposes liability for "distinct and mutually independent patterns of conduct.").

And *Graham* contravenes *Ribas*' finding that a wiretapper was not a party when they listened in on a conversation at the direction of and for the benefit of a party to the conversation. 38 Cal. 3d at 358, 361. Indeed, *Ribas* went so far as to contemplate liability under § 631 for an employer who "**request[s] a secretary to secretly transcribe a conversation over an extension**," even though the secretary's recording was for the sole benefit of their employer. *Id.* (emphasis added). This is because the purpose of § 631 is to: (1) prevent the "simultaneous dissemination [of the contents of a conversation] to an unannounced second auditor, whether that auditor be a person or mechanical device"; and (2) preserve the right of the parties to the conversation to "control the nature and extent of the firsthand dissemination of

[their] statements." 38 Cal. 3d 360-61. *Graham* invites an interpretation that vitiates this two-party consent requirement.

Accordingly, the **proper** inquiry under CIPA § 631(a) is whether a third party "ha[s] the *capability* to use its record of the interaction for any other purpose ([unlike] a tape recorder [which] has no independent capability to divulge the recording for any other purpose but that of its owner)." *Javier*, 649 F. Supp. 3d at 900 (emphasis in original). This "capability" approach does not require that the Third Parties actually used the intercepted data for another purpose, only that the Third Parties can. *Id.* (software provider was a third party because "Active Prospect can use that information for other purposes, even if Javier has not alleged that they have done so in this case"). *See also Yockey*, 688 F. Supp. 3d at 972 (adopting "capability" approach); *Balletto*, 2023 WL 7026931, at *2 (same); *Gladstone*, 2024 WL 3276490, at *6 (same); *Turner*, 2024 WL 2750017, at *10 (same); *Valenzuela*, 2023 WL 8424472, at *7 (same); *Yoon v. Lululemon USA, Inc.*, 549 F. Supp. 3d 1073, 1081 (C.D. Cal. 2021) (same); *Cody v. Ring LLC*, 2024 WL 735667, at *6 (N.D. Cal. 2024) (same).

Indeed, it is sufficient that the Third Parties have the capability to "capture[], store[], and interpret[ Plaintiff's] real-time data—which extends beyond the ordinary function of a tape recorder." *Yoon*, 549 F. Supp. 3d at 1081; *see also Balletto v. Am. Honda Motor Co.*, 2024 WL 589090, at *1, *3 (N.D. Cal. Feb. 13, 2024) ("Salesforce [] has the capability to use the information contained in chats" to "analyze Chat communications to assist with customer service interactions and data analytics"); *Valenzuela v. Nationwide Mutual Ins. Co.*, 686 F. Supp. 3d at 980 n.9 (the "software [] allows a third party to capture messages in real time and later perform data analysis"). Here, Plaintiff alleges that Google "collect[ed] data … to create reports that provide insights" to Sonesta. FAC ¶ 49 (cleaned up). Plaintiff similarly alleges that "Hotjar generates comprehensive recordings that reflect[] user behavior on the website, which can then be analyzed further." *Id.* ¶ 36 (cleaned up).

Plaintiff also alleges that Koddi "processes [captured data] through a machine learning model, and generates [] recommendation[s][.]" *Id.* ¶ 50 (cleaned up).

It is also sufficient that the Third Parties have the capability to "use the data [they] collect[] to improve [their] own products and services, which shows that [they are] capable of creating, recording, and retaining data for purposes other than sending the data back to [Defendant]." *Gladstone*, 2024 WL 3276490, at *6 (cleaned up); *see also Turner*, 2024 WL 2750017, at *10 ("Nuance can use consumers' voice prints to improve its own products and services"); *Balletto*, 2024 WL 589090, at *1, *3 ("Salesforce [] has the capability to use the information contained in chats to [] improve Salesforce's own products and services") (cleaned up). Here, Plaintiff alleges that "Google can access and analyze the Analytics data … [to] improve [its] products and services—for example, to improve Google search results[.]" FAC ¶ 67 (cleaned up). Plaintiff alleges that Hotjar can use collected data "to research, develop, modify, improve or support the services provided by Hotjar[.]" *Id.* ¶ 63 (cleaned up). And Plaintiff alleges that Koddi can use collected data "to develop and improve Koddi's products and services[.]" *Id.* ¶ 68 (cleaned up).

On these allegations, the Third Parties are independent third-party eavesdroppers (for which Defendant can be held liable under § 631(a)).

### B. Plaintiff Alleges that Sonesta Violated the Fourth Prong of CIPA § 631(a)

Defendant contends that Plaintiff "cannot state a claim under CIPA § 631's first clause for the additional reason that she does not allege a connection to a telegraph or telephone line, wire, cable, or instrument." MTD at 18. This is a red herring. Plaintiff alleges that Sonesta violated prong four of CIPA § 631(a) by enabling the Third Parties' wrongdoing. *See* FAC ¶ 92. The Third Parties' conduct itself—though not violative of prong one of CIPA § 631(a)—is violative of prongs two ("… reads or attempts to read or learn the contents or meaning of any message, report, or communication …") and three ("uses, or attempts to use, in any manner, or

for any purpose, or to communicate in any way, any information so obtained"). *See* CIPA § 631(a); *see also* FAC ¶¶ 90-91.

### C. Plaintiff Alleges Interception "In Transit"

Defendant argues that "Plaintiff does not plausibly allege that her communications were intercepted "in transit or passing over a wire, line, or cable." MTD at 18. That is incorrect.

First, Defendant relies on a graphic purporting to prove that Plaintiffs' "in transit" allegations is incorrect. MTD at 19. But this illustration misconstrues Plaintiffs' allegations and is outside of the four corners of the complaint. As such, it cannot support dismissal. *See Gerritsen v. Warner Bros. Ent.*, 112 F.Supp.3d 1011, 1020 (N.D. Cal. 2015) (in deciding a Rule 12(b)(6) motion, a court "generally looks only to the face of the complaint and documents attached thereto.").

Second, § 631(a) is written in the disjunctive, imposing liability for eavesdropping on a communication "while [it] is in transit or passing over any wire, line, or cable, **or is being sent from, or received at any place within this state**." Cal. Penal Code § 631(a) (emphasis added). Thus, it penalizes third parties who intercept communications "while the communication[s] [are] either 'in transit' or [are] 'being sent from' and 'received at' a place within this state." *Ribas*, 696 P.2d 637, 640 (emphasis added); *Revitch v. New Moosejaw, LLC*, 2019 WL 5485330, at *2 (N.D. Cal. Oct. 23, 2019) ("the particulars of the eavesdropping mechanism are of little consequence to the section 631 analysis" because "[s]ection 631's protections extend explicitly to the beginnings and ends of communications"). Based on CIPA's plain language, even if Plaintiff's communications were not intercepted "in transit"—and they were—her communications were intercepted while being "sent from, or received at, a place within this state." *See* FAC ¶ 3 ("Plaintiff Mitchell was in California when she visited the Website."). As such, Plaintiff alleges an underlying violation of § 631.

Third, Courts routinely find simultaneous duplication and interception of

communications sufficient to meet the "in transit" requirement. *See, e.g.*, *In re Facebook, Inc. Internet Tracking Litig*., 956 F.3d 589, 608 (9th Cir. 2020) ("[S]imultaneous, unknown duplication and communication . . . do[es] not exempt a defendant from liability … Permitting an entity to engage in the unauthorized duplication and forwarding of unknowing users' information would render permissible the most common methods of intrusion"); *Heerde v. Learfield Commc'ns, LLC*, 2024 WL 3573874, at *8 (C.D. Cal. 2024) ("Plaintiffs allege that, after they entered their Search Terms, the Search Terms were replicated and sent in parallel to the tracking entities. … Therefore, … their communications were intercepted in transit.") (cleaned up); *Cousin v. Sharp Healthcare*, 681 F. Supp. 3d 1117, 1130-31 (S.D. Cal. 2023) ("Plaintiffs plead that communications were intercepted in transit sufficient to survive dismissal" in the face of "Defendant['s] claims that Meta Pixel creates two separate communications[.]"); *Revitch*, 2019 WL 5485330, at *2 ("Even if the browser caused a parallel signal to be sent to NaviStone, that intervention happened while the signal was already in transit from Revitch's device.").

Here, Plaintiff makes detailed allegations showing her communications were intercepted "in transit." The FAC explains in detail how the Hotjar (FAC ¶¶ 30-32, 3644), Google (*id.* ¶¶ 49, 54-58), and Koddi (*id.* ¶¶ 50, 59-60) trackers work. And the FAC sets out the precise means by which the communications were intercepted while "in transit," prior to reaching their final destination. *See id.* ¶ 51. No additional allegations are required. *See, e.g.*, *D'Angelo v. Penny OpCo, LLC*, 2023 WL 7006793, at *8 (S.D. Cal. Oct. 24, 2023); *Valenzuela v. Nationwide Mut. Ins. Co.*, 686 F. Supp. 3d 969, 978–79 (C.D. Cal. 2023); *Byars v. Goodyear Tire & Rubber Co.*, 654 F. Supp. 3d 1020, 1027 (C.D. Cal. 2023).

Defendant's cases do not compel a different result. In *Adler v. Community.com, Inc.*, 2021 WL 4805435, at *4 (C.D. Cal. Aug. 2, 2021) "there [was] no plausible allegation that [d]efendant[s] acted to learn the contents of the

messages while they were, in a technical sense, in transit or in the process of being received[.]" And nothing in the FAC so much as suggests that the communications at issue were "received by the destination server [i.e., Sonesta's], a[nd] … stored" (*Lindsay-Stern v. Garamszegi*, 2016 WL 11745948, at *4 (C.D. Cal. Oct. 13, 2016)) (cleaned up), prior to being intercepted by the Third Parties.

### D. Plaintiff Alleges that Sonesta "Aided, Agreed With, Employed, and Conspired With" the Third Parties

Defendant argues that Plaintiff fails to state a claim under § 631(a) because she does not "[p]lead [a]iding-and-[a]betting." MTD at 20. That is wrong. Prong four of § 631(a) provides for liability when a person, "by means of any machine, instrument, contrivance, or in any other manner, … **aids, agrees with, employs, or conspires with** any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned above in this section." CIPA § 631(a) (emphasis added). Prong four does not require "aiding and **abetting**" because the word "abet" appears *nowhere* in CIPA § 631(a). Had the legislature intended for "aids" to mean "aids and abets," it would have written the latter term instead of the former. *Cousin*, 681 F. Supp. 3d at 1129-30 ("Defendant's contention that 'aids' means 'aiding and abetting' ignores the 'agrees with, employs, or conspires with' language of the clause. Defendant provides no case law requiring the Court to analyze 'aids, agrees with, employs, or conspires with' as solely 'aiding and abetting.'"); *In re Cell Tower Litig.*, 2012 WL 1903883, at *2 (S.D. Cal. May 24, 2012) ("The first step in analyzing a statute is to scrutinize the actual words of the statute, giving them a plain and commonsense meaning.") (cleaned up).

The legislature's use of the terms "aids," "agrees with," and "employs" indicates that CIPA § 631(a) was meant to apply to a much broader swath of non-criminal conduct. *See Cousin*, 681 F. Supp. 3d at 1129-30. To that end, "aid"

should be interpreted as "to give assistance,"[3] "agrees with" as "to concur in opinion or purpose,"[4] and "employs" as "to make use of" or "to hire."[5] In short, a defendant violates prong four where it simply enables another's wrongdoing. *See Revitch*, 2019 WL 5485330, at *2 ("[T]he complaint adequately alleges that Moosejaw violated section 631 by **enabling** NaviStone's wrongdoing.") (emphasis added).

Here, the FAC is replete with allegations that "the Third Parties, **as enabled by Defendant**, collect the contents of Californians' communications with the Website[.]" FAC ¶ 69 (emphasis added). Plaintiff makes clear that "Defendant owns and operates the Website. Defendant has integrated the Third Parties' wiretaps into the Website." *Id.* ¶ 23. Plaintiff also explains that: "[P]ursuant to agreements with Hotjar, … Defendant voluntarily embedded the session replay wiretaps on its Website.." *Id.* ¶ 42. Plaintiff provides screenshots depicting how "Google, as enabled by Defendant, contemporaneously intercepts the following Website communications[,]" (*id.* ¶ 54) and the same is true of Koddi (*id.* ¶ 59). These allegations are sufficient to plead Defendant's violation of prong four of CIPA § 631(a). *See Cousin*, 681 F. Supp. 3d at 1129-30.

But even if Plaintiff were required to allege aiding and abetting—which she is not—she has done so. *Rodriguez v. Ford Motor Co.*, 2024 WL 1223485, at *15 (S.D. Cal. Mar. 21, 2024) (dismissing with leave to amend where, unlike here, the plaintiff failed to allege that the defendant knew how the third party used the intercepted data). A person may be held liable as an aider and abettor where it: (1)(a) knows the other's conduct constitutes a breach of duty and (b) gives substantial assistance to the other to so act; or (2)(a) the person's own conduct, when considered separately, constitutes a breach of the duty to the third person and (b) the person gives

---

[3] *Aid*, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/aid.

[4] *Agree*, Black's Law Dictionary (11th ed. 2019).

[5] *Employ*, Black's Law Dictionary (11th ed. 2019).

substantial assistance to the other in accomplishing a tortious result. *Id.*

Plaintiff alleges Sonesta knew the Third Parties' conduct constituted a breach of duty because it knew the ways the Third Parties used the intercepted information for the Third Parties' own purposes, beyond merely storing it. FAC ¶¶ 32-38, 48-50, 61-68. Those uses were outlined by the Third Parties' terms. *Id.* ¶¶ 61-68. Indeed, the very purpose for embedding the tracking technologies into the Website was to assist the Third Parties' advertising and analytics. *Id.* ¶¶ 32-38, 48-50. Sonesta breached its duty to Plaintiff and class members to safeguard their sensitive information (protected by Cal. Civil Code § 53.5) and keep it confidential. *Id.* ¶¶ 2-3. 19-25, 69-70, 92, 102-107. Thus, contrary to Defendant's assertions, "Sonesta [knowingly] assisted in an[] alleged wrong." MTD at 20. *See Ribas,* 38 Cal. 3d at 361 (secret monitoring violates the "right to control the nature and extent of the firsthand dissemination of [] statements."). Last, Sonesta substantially assisted the Third Parties in unlawfully intercepting Plaintiff's and class members' sensitive, confidential information. *See supra*. Thus, Plaintiff has met her burden.

Moreover, it is wrong that "Sonesta could not have known of the alleged wrong because … [it] *obtained* consent." MTD at 20. As discussed above, Defendant did **not** receive consent. *See supra* § II. Accordingly, this does not preclude a finding that Defendant violated § 631.

## V. PLAINTIFF STATES A CLAIM UNDER CIPA § 632

### A. Plaintiff Alleges Eavesdropping

Defendant contends that Plaintiff's CIPA § 632 claim fails because "Plaintiff has failed to plausibly allege any unlawful eavesdropping or recording[.]" MTD at 21. But Plaintiff alleges unlawful eavesdropping by the Third Parties. *See* FAC ¶¶ 96-108. And a party who aids and abets a violation of § 632 of CIPA is also liable under the statute. *See Vera v. O'Keefe*, 791 F. Supp. 2d 959, 965 (S.D. Cal. 2011); *Vaccaro v. Altais*, 2023 WL 7003211, at *5 (C.D. Cal. Oct. 23, 2023). Specifically, § 31 of the California Penal Code allows for aider and abettor liability. *See* Cal. Penal

Code § 31. Section 31, when applied to CIPA § 632, "allows for [an aider and abettor] to be viewed as a principal whether or not she actually physically recorded the confidential conversation." *Vera*, 791 F. Supp. 2d at 965. "The plain language of the statute does not limit liability to the person who has physically recorded a confidential conversation." *Id.* And as set forth *supra*, § IV.D, Defendant aided and abetted the Third Parties' violations.

### B. Plaintiff Had an Objectively Reasonable Expectation of Privacy

Defendant argues that Plaintiff's communications were not "confidential," as required by CIPA § 632, because Plaintiff had no "objectively reasonable expectation that [they were] not being overheard or recorded[,]" given "Sonesta's repeated disclosures[.]" MTD at 21. Not so. Sonesta's disclosures were deficient. *See supra* § II.

Defendant also argues "Internet-based communications are not 'confidential' within the meaning of [S]ection 632[.]" MTD at 21. But "[n]othing in Section 632 ties confidentiality to the mode in which a conversation is recorded." *Brown v. Google LLC*, 685 F. Supp. 3d 909, 937 (N.D. Cal. 2023). "That [] communications occurred over the internet does not automatically mean that plaintiffs gave up th[e] expectation of privacy[.] … Times change, as do modes of communication." *Id. at* 939. "Rather, the inquiry is whether 'any party to the communication desires it to be confined to the parties thereto.'" *Id.*; *see also Mirkarimi v. Nevada Prop. 1 LLC*, 2013 WL 3761530, at *2 (S.D. Cal. July 15, 2013). Thus, it is sufficient that Plaintiff alleges she desired and reasonably expected that her confidential communications would be confined to her and Sonesta. *See, e.g.,* FAC ¶ 106.

Even if Plaintiff must "show[] that there is something unique about these particular internet communications which justify" their confidentiality, Plaintiff has done so. *In re Meta Pixel Healthcare Litig.* ("*In re Meta Pixel*"), 647 F. Supp. 3d 778, 799 (N.D. Cal. 2022). Courts find communications "confidential" when

protected under applicable laws, regulations, and industry norms. *See, e.g.*, *In re Meta Pixel*, 647 F. Supp. 3d at 799 (finding communications confidential when protected by federal law); *Bernstein v. United Collection Bureau, Inc.*, 2013 WL 5945056, at *4 (S.D. Cal. 2013) ("The conversation allegedly included discussions protected by the attorney-client privilege, … as well as highly personal and private financial information[.] … Plaintiff has sufficiently alleged that he had a reasonable expectation the conversation would not be recorded."); *Ewing v. Flora*, 2015 WL 12564225, at *4 (S.D. Cal. 2015) ("due to the personal and financial nature of the conversations with Defendants, Plaintiff had a reasonable expectation of privacy. … Plaintiff has adequately stated a CIPA claim."); *Smith v. Google, LLC*, 2024 WL 2808270, at *6 (N.D. Cal. June 3, 2024) ("sensitive financial information submitted to a tax preparation website[] … were confidential under Section 632."). Here, Defendant violated Plaintiff's reasonable expectation of privacy by enabling the interception of her "guest records," as defined by Cal. Civil Code § 53.5. *See* FAC ¶¶ 16-22, 100-107. Cal. Civil Code § 53.5 mandates that guest records are confidential. *See* Cal. Civil Code § 53.5(a), (c).

Defendant quibbles with the fact that "Plaintiff does not and cannot have a standalone cause of action under [Cal. Civil Code § 53.5(a)]." MTD at 22. But Plaintiff never asserts such a cause of action, and "confidentiality" under CIPA § 632 does not hinge on an independent cause of action. It is also false that the wiretapped "information would not even meet Section 53.5's definition of a 'guest record'" (MTD at 22); *see* FAC ¶¶ 19-21; 102-104. And Cal. Civil Code § 53.5 does not "merely require[] that such records are used for business purposes" (MTD at 23). Instead, it requires guest records to be "used for the intended business purposes **and not improperly disclosed**." FAC ¶ 18 (emphasis added) (citing California S.B. 1194 (September 27, 2018)). That is precisely what happened here, as Defendant allowed the improper disclosure of Plaintiff's data to entities that were not legitimate "third-party service provider[s]," as defined by Cal. Civil Code § 53.5(f). *See* FAC ¶¶ 22,

105; 62-68. Finally, § 53.5 does not merely "protect citizens from government overreach" (MTD at 23); it protects citizens from the overreach of private entities like Sonesta and the Third Parties. *See* FAC ¶¶ 16-18.

### C. The Tracking Technologies are Electronic Amplifying or Recording Devices

Defendant contends Plaintiff's § 632 claim fails because "she does not allege that Sonesta used an electronic amplifying or recording device." MTD at 23. But the Third Parties' trackers were recording devices. *See, e.g.*, FAC ¶ 31 ("session replay … record[s] a visitor's every move on a website, in real time") (cleaned up); ¶ 35 ("session replay is used by Hotjar[] … to surreptitiously capture and/or record, in real time, …"); ¶ 61 ("the Third Parties[] … record, extract data from, and analyze conversations to which they are not parties.").

"The majority of courts to consider this issue . . . . have entertained the notion that software may be considered a device for the purpose of the Wiretap Act." *United States v. Hutchins*, 361 F. Supp. 3d 779, 795 (E.D. Wis. 2019) (collecting cases); *see also*, *e.g.*, *Gladstone*, 2024 WL 3276490, at *8 ("[T]he Court finds that 'device,' as used in Section 632, can include software."); *Doe v. Meta Platforms, Inc.*, 690 F. Supp. 3d 1064 (N.D. Cal. 2023) ("I agree that the Pixel software is a device under [CIPA] section 632(a)."); *In re Carrier IQ*, 78 F. Supp. 3d, 1051, 1084 (N.D. Cal. 2015) ("Plaintiffs have sufficiently alleged that the Carrier IQ Software is a 'device' for purposes of the Wiretap Act.").

*Doe v. Microsoft Corp.*, 2023 WL 8780879, at *8 (W.D. Wash. Dec. 19, 2023), is unpersuasive. In *Doe*, the Court relied on two decisions concerning CIPA § 637.7 that Defendant also cites: *In re Google Location Hist. Litig.*, 428 F. Supp. 3d 185, 193 (N.D. Cal. 2019), and *Moreno v. San Francisco Bay Area Rapid Transit Dist.*, 2017 WL 6387764, at *5 (N.D. Cal. 2017). But, "Section 632 contains materially different language than Section 637.7, and it does not contain similar context that would narrow the meaning of 'device' here." *Gladstone*, 2024 WL

3276490, at *9 (distinguishing *In re Google Locaiton History Litig.*). Specifically, CIPA § 637.7(d) defines a device as something "attached to a vehicle or other movable thing that reveals its location or movement by the transmission of electronic signals." By contrast, CIPA § 632 was enacted "to be more expansive," and "the Ninth Circuit has observed the California Supreme Court's instruction that 'all CIPA provisions are to be interpreted in light of the broad privacy-protecting statutory purposes of CIPA.'" *Gladstone*, 2024 WL 3276490, at *7-8; *see also Matera v. Google Inc.*, 2016 WL 8200619, at *19 (N.D. Cal. Aug. 12, 2016) ("[W]hen faced with two possible interpretations of CIPA, the California Supreme Court has construed CIPA in accordance with the interpretation that provides the greatest privacy protection."). Thus, decisions citing to CIPA § 637.7—a narrower subsection of the statute—should not dictate the Court's interpretation of the broader language of CIPA § 632.

Moreover, as several courts have noted:

> [Defendant's] position is problematic because it ignores the fundamental fact that, in order for software to work, it must be run on some kind of computing device. It is artificial to claim that software must be viewed in isolation from the computing device on which it runs and with which it is inseparable in regard to the challenged conduct.

*James v. Walt Disney Co.*, 701 F. Supp. 3d 942 (N.D. Cal. 2023); *see also Rodriguez v. Ford Motor Co.*, 2024 WL 1223485, at *7 (S.D. Cal. Mar. 21, 2024). In other words, Defendant's argument divorces the Third Parties' software from the physical, tangible computer the software is running on. There is no commonsense reason to do this, and such an interpretation flies in the face of the California Supreme Court's directive to apply CIPA "to new technologies where such a reading would not conflict with the statutory scheme." *Matera*, 2016 WL 8200619, at *20.

Accordingly, the Third Parties' tracking technologies are electronic amplifying or recording devices for the purposes of CIPA § 632.

## CONCLUSION

For the reasons fully discussed above, Plaintiff asks this Court to deny Defendant's motion to dismiss the First Amended Complaint. Should the Court grant any part of Defendant's motion to dismiss, Plaintiff respectfully requests that she be granted leave to file an amended complaint.

Dated: August 23, 2024

Respectfully submitted,

**BURSOR & FISHER, P.A.**

By: /s/ *Philip L. Fraietta*

Philip L. Fraietta (State Bar No. 354768)
1330 Avenue of the Americas, 32nd Floor
New York, NY 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
E-mail: pfraietta@bursor.com

**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
Brittany S. Scott (State Bar No. 327132)
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-mail: ltfisher@bursor.com
bscott@bursor.com

*Attorneys for Plaintiff*

## CERTIFICATE OF COMPLIANCE PURSUANT TO L.R. 11-6.2

I hereby certify that this brief contains 6,995 words – no more than the 7,000 words permitted by L.R. 11-6.1.

By: /s/ *Philip L. Fraietta*
Philip L. Fraietta