Stephanie Sheridan (CA 135910)
Meegan B. Brooks, CIPP/US (CA 298570)
Benesch, Friedlander, Coplan & Aronoff LLP
100 Pine Street, Suite 3100
San Francisco, California 94111
Telephone:628.600.2250
Facsimile: 628.221.5828
ssheridan@benechlaw.com
mbrooks@beneschlaw.com

Attorneys for Defendant
Sonesta International Hotels
Corporation

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

Kentoya Mitchell, individually, and on behalf of all others similarly situated,

Plaintiff,

v.

Sonesta International Hotels Corporation,

Defendant.

Case No. 2:24-cv-02603-GW-SSC

**REPLY IN SUPPORT OF DEFENDANT SONESTA INTERNATIONAL HOTELS CORPORATION'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**

Complaint Filed: February 26, 2024
Date of Removal: March 29, 2024
FAC Filed: June 7, 2024

Hearing Date: October 7, 2024
Time: 8:30 a.m.

**TABLE OF CONTENTS**


I. INTRODUCTION ....... 1

II. PLAINTIFF CANNOT SURVIVE SONESTA'S RULE 12(B)(1) CHALLENGE BECAUSE SHE LACKS STANDING ....... 2

A. Plaintiff Concedes She Lacks Standing to Sue Quantum Metric, Sentry, or CarStack ....... 2

B. None of the Remaining Technologies Had Access to Personally Identifiable Information ....... 2

III. PLAINTIFF's CONSENT TO THE PRIVACY STATEMENT FORECLOSES ALL OF HER CLAIMS ....... 2

A. Prevailing Caselaw Holds that Screens Like Sonesta's Travel Pass Sign-Up Process Are Enforceable ....... 3

B. Plaintiff's Agreement at Check-out Reinforces that She Consented and Was Not Injured ....... 6

C. The Privacy Statement's Disclosures Are Sufficiently Specific to Provide Notice ....... 6

D. Plaintiff Lacks Standing Because Her Consent Negates the Possibility of Injury ....... 8

E. The Court Should Dismiss Plaintiff's CIPA Claims Because Plaintiff Does Not (and Cannot) Plead Lack of Consent ....... 8

IV. THE FAC IS TIME-BARRED ....... 9

V. SONESTA DID NOT VIOLATE CIPA §631(a) ....... 11

A. The Party Exception Bars Plaintiff's §631 Claim ....... 11

1. The Court should not put off the determination of whether the party exception applies ....... 12

2. Plaintiff fails to distinguish her allegations from those rejected in *Graham v. Noom* and numerous subsequent decisions ....... 12

3. The Court should decline to follow *Javier* and its misreading of *Ribas* ....... 13

3. Plaintiff's claim still fails under *Javier* ....... 15

B. Plaintiff's Allegations of Duplicated Messages Are Insufficient to Constitute an Interception in Transit ....... 16

C. Plaintiff's Attempts to Broaden the Meaning of CIPA's Final Prong Make No Sense, and She Fails to State a Claim under It ....... 18

VI. SONESTA DID NOT VIOLATE CIPA §632 .......... 19

A. Plaintiff's Newly-Raised Aiding-and-Abetting Theory Under §632 is Inappropriate and Incorrect .......... 19

B. Plaintiff Fails to Overcome the Presumption that She Had No Objectively Reasonable Expectation of Privacy .......... 20

C. Plaintiff's Definition of a Recording Device is Overbroad and Would Render Practically all Software Illegal .......... 21

VII. CONCLUSION .......... 21

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ... 22

*Berman v. Freedom Financial Network, LLC*,
30 F.4th 849 (9th Cir. 2022) ... 13, 14

*Bitsakis v. JP Morgan Chase Bank*,
2012 WL 359283 (C.D. Cal. Feb. 1, 2012) ... 18

*Brown v. Google LLC*,
685 F. Supp. 3d 909 (N.D. Cal. 2023) ... 28

*Byars v. Hot Topic, Inc.*,
656 F. Supp. 3d 1051 (C.D. Cal. 2023) ... 20, 23, 26

*Calhoun v. Google LLC*,
526 F. Supp. 3d 605 (N.D. Cal. 2021) ... 15

*Campbell v. Facebook Inc.*,
77 F. Supp. 3d 836 (N.D. Cal. 2014) ... 28

*Clapper v. Amnesty Int'l USA*,
568 U.S. 398 (2013) ... 16

*DeBruyne v. Equitable Life Assur. Soc'y of U.S.*,
920 F.2d 457 (7th Cir. 1990) ... 18

*Del Vecchio v. Amazon.com, Inc.*,
2012 WL 1997697 (W.D. Wash. June 1, 2012) ... 15

*In re Doubleclick Inc. Privacy Litig.*,
154 F.Supp.2d 497 (S.D.N.Y. 2001) ... 17

*Eisenberg v. Citibank, NA*,
787 F. App'x 929 (9th Cir. 2019) ... 17

*Franklin v. Ocwen Loan Servicing, LLC*,
2018 WL 5923450 (N.D. Cal. Nov. 13, 2018) ... 18, 19

*Garcia v. Enter. Holdings, Inc.*,
78 F.Supp.3d 1125 (N.D. Cal. 2015) .................................................. 16, 17

*Gonzales v. Uber Techs., Inc.*,
305 F.Supp.3d 1078 (N.D. Cal. 2018) .................................................. 17

*In re Google Assistant Privacy Litig.*,
457 F.Supp.3d 797 (N.D. Cal. 2020) .................................................. 19

*Graham v. Noom, Inc.*,
533 F.Supp.3d 823 (N.D. Cal. 2021) .................................................. 20, 21, 24

*Heiting v. Taro Pharms. USA, Inc.*,
2023 WL 9319049 (C.D. Cal. 2023) .................................................. 23, 24

*In Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020) .................................................. 20

*Javier v. Assurance IQ, LLC*,
2022 WL 1744107 (9th Cir. 2022) .................................................. *passim*

*Javier v. Assurance IQ, LLC*,
2023 WL 3933070 (N.D. Cal. June 9, 2023) .................................................. 18, 19

*Javier v. Assurance IQ, LLC*,
649 F. Supp. 3d 891 (N.D. Cal. 2023) .................................................. 21

*Keebaugh v. Warner Bros. Ent. Inc.*,
100 F.4th 1005 (9th Cir. 2024) .................................................. 11, 12, 13

*Kolender v. Lawson*,
461 U.S. 352 (1983) .................................................. 22

*Konop v. Hawaiian Airlines, Inc.*,
302 F.3d 868 (9th Cir. 2002) .................................................. 24

*Leason v. Berg*,
927 F.2d 609 (9th Cir. 1991) .................................................. 26

*Licea v. American Eagle Outfitters*,
659 F.Supp.3d 1072 (C.D. Cal. 2023) .................................................. 23

*Licea v. Vitacost.com, Inc.*,
683 F. Supp. 3d 1118 (S.D. Cal. 2023) .................................................. 21

*Lujan v. Defs. of Wildlife*, 504 U.S. 555 (1992) ... 16, 22

*LVRC Holdings LLC v. Brekka*, 581 F.3d 1127 (9th Cir. 2009) ... 27, 29

*Matera v. Google Inc.*, 2016 WL 8200619 (N.D. Cal. Aug. 12, 2016) ... 19

*In re Meta Pixel Healthcare*, 647 F.Supp.3d 778 (N.D. Cal. 2022) ... 28

*Meyer v. Uber Techs., Inc.*, 868 F.3d 66 (2d Cir. 2017) ... 12, 13, 18

*Mortensen v. Bresnan Commc'n, L.L.C.*, 2010 WL 5140454 (D. Mont. Dec. 13, 2010) ... 15

*NYC Topanga, LLC v. Bank of Am.*, 2015 WL 4075844 (C.D. Cal. July 2, 2015) ... 18

*Patrick v. Running Warehouse, LLC*, 93 F.4th 468 (9th Cir. 2024) ... 12

*Pizarro v. QuinStreet, Inc.*, 2022 WL 3357838 (N.D. Cal., Aug. 15, 2022) ... 12, 13

*Potter v. Havlicek*, 2008 WL 2556723 (S.D. Ohio June 23, 2008) ... 29

*Provencio v. Vazquez*, 258 F.R.D. 626 (E.D. Cal. 2009) ... 27

*Revitch v. New Moosejaw, LLC*, 2019 WL 5485330 (N.D. Cal. Oct. 23, 2019) ... 28

*Rodriguez v. Google LLC*, 2021 WL 2026726 (N.D. Cal. May 21, 2021) ... 23, 28

*Rogers v. Hedgpeth*, 320 F. App'x. 815 (9th Cir. 2009) ... 26

*Saleh v. Nike, Inc.*, 562 F. Supp. 3d 503 (C.D. Cal. 2021) ... 10

*Schwartz v. Finn*, 2022 WL 636641 (9th Cir. Mar. 4, 2022) .......... 18

*Silver v. Stripe Inc.*, 2021 WL 3191752 (N.D. Cal. July 28, 2021) .......... 17

*Smith v. Facebook, Inc.*, 262 F.Supp.3d 943 (N.D. Cal. 2017), *aff'd*, 745 F.App'x 8 (9th Cir. 2018) .......... 15

*Smith v. Facebook, Inc.*, 745 F.App'x 8 (9th Cir. 2018) .......... 17

*Spokeo, Inc. v. Robins*, 578 U.S. 330 (2016) .......... 22

*Swarts v. Home Depot, Inc.*, 689 F. Supp. 3d 732 (N.D. Cal. 2023) .......... 24, 28

*Vaccarino v. Midland Nat. Life Ins., Co.*, 2012 WL 1247137 (C.D. Cal. Apr. 13, 2012) .......... 18

*Vaccaro v. Altais*, 2023 U.S. Dist. LEXIS 191058 (C.D. Cal. Oct. 23, 2023) .......... 27

*Valenzuela v. Keurig Green Mountain, Inc.*, 674 F. Supp. 3d 751, 758 (N.D. Cal. 2023) .......... 26

*Valenzuela v. Super Bright LEDs Inc.*, 2023 WL 8424472 (C.D. Cal. 2023) .......... 20, 24

*Vera v. O'Keefe*, 791 F. Supp. 2d 959 (S.D. Cal. 2011) .......... 27

*In re Vizio, Inc., Consumer Priv. Litig.*, 238 F. Supp. 3d 1204 (C.D. Cal. 2017) .......... 20, 23

*Williams v. What If Holdings, LLC*, 2022 WL 17869275 (N.D. Cal. Dec. 22, 2022) .......... 20, 26

*In re Yahoo Mail Litig.*, 7 F.Supp.3d 1016 (N.D. Cal. 2014) .......... 17

*Yockey v. Salesforce, Inc.*, 2023 WL 5519323 (N.D. Cal. Aug. 25, 2023) .......... 24

*Yoon v. Lululemon USA, Inc.*,
549 F. Supp. 3d 1073 (C.D. Cal. 2021) .......... 20, 28

**State Cases**

*Fox v. Ethicon Endo-Surgery, Inc.*,
35 Cal.4th 797 (2005) .......... 17, 18

*Jacome v. Spirit Airlines Inc.*,
2021 WL 3087860 (Fla. Cir. Ct. June 17, 2021) .......... 29

*Jolly v. Eli Lilly & Co.*,
44 Cal.3d 1103 (1988) .......... 17, 18

*Ribas v. Clark*,
38 Cal. 3d 355 (1985) .......... 21, 22, 23, 25

*Rogers v. Ulrich*,
52 Cal. App. 3d at 896–97 .......... 21

*Warden v. Kahn*,
99 Cal.App.3d 805 (1979) .......... 22

**Federal Statutes**

Federal Electronic Communication Privacy Act .......... 29

**State Statutes**

Cal. Penal Code § 31 .......... 27

California Invasion of Privacy Act §631 .......... *Passim*

California Invasion of Privacy Act §632 .......... *Passim*

Civil Code § 53.5 .......... 28

**Rules**

Rule 12(B)(1) .......... 10

**Other Authorities**

California Civil Jury Instructions (2024), No. 1809 .......... 16

## I. INTRODUCTION

Plaintiff's Opposition tacitly concedes that most of her allegations in the First Amended Complaints ("FAC") lack merit. Just as she dismissed the claims in her original complaint after Sonesta proved that it did not use the technologies alleged, she is not disputing that Sonesta did not use half of the newly-alleged technologies during the relevant period and that her claims as to Quantum Metric, Sentry, and CartStack must be dismissed. The remaining claims—addressing Google, Hotjar, and Koddi, innocuous tools she cannot and does not claim collected her personal information—fare no better.

Plaintiff does not dispute that she signed up for Travel Pass weeks before her alleged purchase. Nor does she dispute that she clicked a button acknowledging that she agreed to the Travel Pass Terms, which expressly incorporate Sonesta's Privacy Statement, or that she agreed to Sonesta's Terms and the Privacy Statement *again* when she checked a box before placing her order at issue. These undisputed, judicially noticeable facts doom her case three times over: (1) she lacks Article III standing because she consented to the very conduct at issue, so any alleged injury was self-inflicted; (2) her case is time-barred, and the disclosures prevent her from claiming she could have not known of the alleged conduct earlier; and (3) she cannot plausibly allege that she never consented, as stating a CIPA claim requires. Sonesta's repeated disclosures also undermine Plaintiff's claim that it aided and abetted any secret wiretapping; to the contrary, Sonesta was up-front about its practices. Additionally, those disclosures deflate any suggestion that Plaintiff had a plausible (much less reasonable) expectation of privacy in the allegedly collected data.

Plaintiff also fails to explain how using the three remaining tools implicates CIPA §631 or §632. All of her distorted theories seek to criminalize *any* software, regardless of whether it does anything wrong. All that is required to sue a website using the software, she claims, is that the website used ("enabled") the software, and the software vendor was "capable of" misusing the data—even if the software was only ever used to help the website function. This is not wiretapping.

In short, Plaintiff's theory proves too much. If she is correct that website-data

collection amounts to criminal wiretapping, the Internet as we know it is entirely illegal. If Plaintiff is correct, web developers will have to erect barriers to each and every website, allowing consumers to access web content only after they click a button acknowledging what they already know: Websites collect data about users. The resulting hits to efficiency and to web-users' experience would dwarf any "consumer protection" benefit that Plaintiff might dream up. This Court should dismiss her claims.

## II. PLAINTIFF CANNOT SURVIVE SONESTA'S RULE 12(B)(1) CHALLENGE BECAUSE SHE LACKS STANDING

### A. Plaintiff Concedes She Lacks Standing to Sue Quantum Metric, Sentry, or CarStack

Sonesta showed that Sonesta did not use Quantum Metric, Sentry or CartStack. Martini Decl. ¶¶17–19. Plaintiff does not dispute this showing, and thus has evidently dropped her claims as to these technologies. Opp. at 2; *Saleh v. Nike, Inc.*, 562 F. Supp. 3d 503, 510 (C.D. Cal. 2021). These claims should be dismissed with prejudice.

### B. None of the Remaining Technologies Had Access to Personally Identifiable Information

As a result of Plaintiff's concession, only three technologies require consideration: Hotjar, Google Analytics, and Koddi. Her claims as to these technologies fail because she never disputes that these tools did not have access to personally identifiable information, as opposed to anonymized data about website traffic and usage. Nor does she dispute that, to the extent these tools were used, it was solely to enhance and personalize visitors' experience, understand usage patterns, and/or improve Sonesta's websites, products and services. Martini Decl. ¶¶ 20–21.

## III. PLAINTIFF'S CONSENT TO THE PRIVACY STATEMENT FORECLOSES ALL OF HER CLAIMS

Plaintiff does not dispute that she saw the screenshots attached to Sonesta's Request for Judicial Notice before both enrolling in Travel Pass and later completing her purchase. She does not contest the authenticity or accuracy of the attachments to the Martini

Declaration, nor does she claim she did not read the disclosures or understand that she was agreeing to the terms presented to her. Instead, she asks the Court to delay considering the consent issue, or alternatively, to hold that Sonesta's disclosures are insufficient. Each argument fails.

### A. Prevailing Caselaw Holds that Screens Like Sonesta's Travel Pass Sign-Up Process Are Enforceable

Plaintiff does not and cannot dispute that when she enrolled in Travel Pass, weeks before making her purchase, she clicked the "CREATE ACCOUNT" button immediately above the disclosure, "By submitting this form I certify that I have read, understand, and accept the Terms of Service and Privacy Statement," as shown below:




Plaintiff does not claim she did not read, see, or understand this disclosure. Nonetheless, she argues the disclosure was not sufficiently conspicuous to provide notice of the Privacy Statement. Opp. at 6–8. Courts, however, have recently rejected that argument and upheld sign-up screens akin to Sonesta's.

*Keebaugh v. Warner Bros. Ent. Inc.*, 100 F.4th 1005, 1009 (9th Cir. 2024) (reversing trial court finding that Warner Bros. failed to provide reasonably conspicuous notice):



*Patrick v. Running Warehouse, LLC*, 93 F.4th 468, 476 (9th Cir. 2024):




*Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 76 (2d Cir. 2017) (applying California law, and vacating and remanding trial court decision holding plaintiff did not have reasonably conpicuous notice of Uber's Terms):




Sonesta's disclosure contains all the same features that led the courts to enforce online contracts in the cases above:

- **Explicit Notice.** The Sonesta sign-up screen provides explicit notice of the Privacy Statement, stating plainly that "By Submitting this form I certify that I have read, understand, and accept the Terms of Service and Privacy Statement." *See Meyer*, 868 F.3d at 78–80; *Patrick*, 93 F.4th at 477; *Keebaugh*, 100 F.4th at 1020.
- **No Clutter.** "[T]he general design of the webpage [. . .] [was] relatively uncluttered and ha[d] a muted, and essentially uniform, color scheme." *Pizarro v. QuinStreet, Inc.*, 2022 WL 3357838, *3 (N.D. Cal., Aug. 15, 2022); *Meyer*, 868 F.3d at 78; *Keebaugh*, 100 F.4th at 1020.
- **Disclosure and Hyperlink Contrast.** The links are underlined "such that a user

would not 'be required to hover their mouse over otherwise plain-looking text or aimlessly click on words on a page in an effort to ferret out hyperlinks.'" *Pizarro*, 2022 WL 3357838 at *3; *Keebaugh*, 100 F.4th at 1020.

- **No Need to Scroll.** Finding that "the design of the screen and language used render the notice provided reasonable as a matter of California law," the *Meyer* court considered that "[t]he entire screen is visible at once, and the user does not need to scroll beyond what is immediately visible to find notice of the Terms of Service." 868 F.3d at 78. The same is true of Sonesta's webpage.
- **Proximity to the Consent Button.** Sonesta's disclosure appears close to the "Create Account" button. Under *Berman*, *Pizarro*, and *Meyer*, this factor weighs in Sonesta's favor.
- **Simultaneous Notice.** In *Meyer*, the fact that "notice of the Terms of Service [was] provided simultaneously to enrollment, thereby connecting the contractual terms to the services to which they apply," weighed in favor of finding notice. 868 F.3d at 78. The same is true here.

This case is even more straightforward than the above-described cases. Those cases addressed online-contract-formation questions in the context of compelling arbitration. Here, the Court need not find that the check-out screen formed a binding contract—simply that Plaintiff consented to (or at least had inquiry notice of) the practices outlined in the privacy policy. Again, Plaintiff does not even claim to have not understood that she was agreeing to the Privacy Statement when she enrolled in Travel Pass.

*Berman v. Freedom Financial Network, LLC*, 30 F.4th 849 (9th Cir. 2022), cited in the Opposition, predates the decisions above and addressed readily distinguishable screenshots. The *Berman* disclosure was buried in a clutter of bright colors, photographs, and boxes, which "dr[e]w the user's attention away from the barely readable critical text;" appeared in "tiny gray font considerably smaller than the font used in the surrounding website elements, and indeed in a font so small that it is barely legible to the naked eye;" and failed to "indicate to the user what action would constitute assent to [the] terms and

conditions." *Id.* at 858.

**B. Plaintiff's Agreement at Check-out Reinforces that She Consented and Was Not Injured**

Plaintiff also proactively checked a box at check-out before she placed her order, again manifesting that she agreed to Sonesta's Privacy Statement.

> ☐ By checking this box, I certify that I have read, understand, and accept the Terms of Service, Privacy Statement, and Cancellation Policy. I have read and understand the Rate Description and Rate Rules for my reservation.
> Please Note: Taxes are estimated until check-in at the hotel.

Plaintiff asks the Court to disregard this checkbox, because Sonesta allegedly engaged in "tracking" before Plaintiff checked the box. Opp. at 7–8. This argument fails for two reasons. First, this case concerns so-called "guest records." A visitor to the website cannot even become a guest until *after* she checks the box and places the order. Martini Decl. ¶¶12–14. Regardless, Plaintiff's decision to check the box a second time suggests she understood and had no concerns about the privacy practices at issue. The fact that this was her *second* agreement to the same terms distinguishes this case from *Javier v. Assurance IQ, LLC*, 2022 WL 1744107, at *2 (9th Cir. 2022), where plaintiff was not asked his consent beforehand.

**C. The Privacy Statement's Disclosures Are Sufficiently Specific to Provide Notice**

Plaintiff is also wrong that the Travel Pass Terms, and Sonesta's Privacy Statement and Terms of Service, do not disclose the challenged practices. Opp. at 3–6; Mot. at 5–8. The Travel Pass Terms explain, *e.g.*, that "Members also authorize Sonesta to share your Account Information with subsidiaries and third parties, such as Program partners and technology service providers in order to service your Member Account and to facilitate the booking and processing of reservations." RJN, Exh. A. The Privacy Statement describes, among other things, "important information about how we collect, use, and disclose your

personal data" and outlines that "guest records"—like name, contact information, IP address, payment information and guest preferences—are collected. RJN, Exh. B ("We collect other data about you, including …. browser and device data, and data collected through cookies, pixel tags, and other technologies") (emphasis added). Moreover, as discussed, the Privacy Statement explains that data about guests are collected to help "enhance our offerings to you and our customers," and that such data are shared with "[b]usiness partners, sponsors, and other third parties." *Id.* (emphasis added). These policies provide more than sufficient notice.

For example, Sonesta's straightforward disclosure that "we collect other data about you" (which, again, is one of many disclosures made to Plaintiff) is analogous to that upheld in *Smith v. Facebook, Inc.*, 262 F.Supp.3d 943, 954 (N.D. Cal. 2017), *aff'd*, 745 F.App'x 8 (9th Cir. 2018) ("We collect information …"). The *Smith* court explained that even though "the meaning of 'information' might be broad—it could include any data transmitted when the visitor's browser connects to Facebook's servers, including cookies, referer headers, and all the parts that combine to form a browser fingerprint," a "'contractual term is not ambiguous just because it is broad.'" *Id.*

Several courts have held that similar disclosures provide adequate notice of tracking activity. *Mortensen v. Bresnan Commc'n, L.L.C.*, 2010 WL 5140454, at *5 (D. Mont. Dec. 13, 2010) (provider disclosed customers' "electronic transmissions would be monitored and would in fact be transferred to third-parties for the purposes of providing 'content or services'"); *Del Vecchio v. Amazon.com, Inc.*, 2012 WL 1997697, at *6 (W.D. Wash. June 1, 2012) (holding the defendant "notif[ied] visitors that it will take the very actions about which Plaintiffs now complain"). This Court should hold the same here.

*Calhoun v. Google LLC*, which Plaintiff cites, is inapposite. There, the terms specifically represented that "You don't need to provide any personal information to use Chrome," yet Google actually collected personal information when Plaintiffs used Chrome without sync. 526 F. Supp. 3d 605, 621–22 (N.D. Cal. 2021). Plaintiff does not identify any comparable representation by Sonesta. Plaintiff attempts to analogize Sonesta's

statements that it will not give data to third parties except "for the disclosure noted above" and that "we do not grant permission to any … third-party service providers that may receive your information to use such information *independent of use in connection with our products and services, consistent with this policy*," Opp. at 5 (emphasis added), but these disclosures are entirely consistent with the policy, as Plaintiff does not claim the vendors use the data for any nondisclosed purpose.

### D. Plaintiff Lacks Standing Because Her Consent Negates the Possibility of Injury

It is ***Plaintiff's*** burden to establish Article III standing. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992). Plaintiff fails to satisfy this burden. To the contrary, her repeated agreement to Sonesta's privacy practices prevents her from now claiming that they injured her. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 40 (2013) (plaintiff "cannot manufacture standing merely by inflicting harm on [herself]."). Plaintiff does not dispute that she lacks standing to challenge any practices that she agreed to.

This Court should not defer this question to a later stage, as Plaintiff asks, as it goes to the threshold issue of whether subject-matter jurisdiction exists. *Lujan*, 504 U.S. at 560–61.

### E. The Court Should Dismiss Plaintiff's CIPA Claims Because Plaintiff Does Not (and Cannot) Plead Lack of Consent

Plaintiff's Opposition fails to meaningfully address the fact that the disclosures prevent her from pleading lack of consent, which "is an express element of a claim" and "must be alleged in the complaint." *Garcia v. Enter. Holdings, Inc.*, 78 F.Supp.3d 1125, 1136 (N.D. Cal. 2015); Judicial Council of California Civil Jury Instructions (2024), No. 1809 (listing lack of consent as an element under §632). When evaluating consent as an element at the motion-to-dismiss stage, the Court need not accept as true any allegations contradicted by "matters properly subject to judicial notice or by exhibit" or "that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Garcia*, 78 F.Supp.3d at 1136. This is true even if the "[p]laintiff denies having conferred [her]

consent." *Id*.

Applying these principles, courts across the country routinely dismiss wiretapping and other privacy claims when confronted with evidence that the plaintiff agreed to a privacy policy disclosing the challenged practice. *E.g.*, *Smith v. Facebook, Inc.,* 745 F.App'x 8 (9th Cir. 2018); *In re Doubleclick Inc. Privacy Litig*., 154 F.Supp.2d 497, 503, 2510 (S.D.N.Y. 2001); *Silver v. Stripe Inc.,* 2021 WL 3191752, at *4 (N.D. Cal. July 28, 2021); *In re Yahoo Mail Litig.*, 7 F.Supp.3d 1016, 1030 (N.D. Cal. 2014); *Gonzales v. Uber Techs., Inc.*, 305 F.Supp.3d 1078, 1092 (N.D. Cal. 2018).

## IV. THE FAC IS TIME-BARRED

Plaintiff does not dispute that she waited more than a year after her purchase to allege anything concerning the new technologies in the FAC, or that a one-year limitations period applies. Instead, she claims that the "delayed-discovery rule" tolled the limitations period because the "wiretapping was carried out surreptitiously and without her consent." Opp. at 8–9.

Plaintiff understates her pleading burden. To show that Plaintiff is time-barred, it is not Sonesta's burden to establish that Plaintiff was aware of the practices at issue. Instead, *Plaintiff* must plausibly allege: (1) the time and manner of discovery; and (2) the inability to have made earlier discovery despite reasonable diligence. *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal.4th 797, 808 (2005) ("[T]he court places the burden on the plaintiff to 'show diligence' [and] conclusory allegations will not withstand demurrer.'"). Affirmative consent is not the relevant standard—as long as Plaintiff had *inquiry notice*, the discovery rule does not apply. *Eisenberg v. Citibank, NA*, 787 F. App'x 929, 930–31 (9th Cir. 2019). Inquiry notice exists "when the plaintiff suspects or should suspect that her injury was caused by wrongdoing, that someone has done something wrong to her." *Jolly v. Eli Lilly & Co.*, 44 Cal.3d 1103, 1110 (1988).

Although the FAC does not specify the time or manner of her alleged discovery, judicially noticeable facts make clear that she had notice of, and consented to, the Privacy Statement by April 2023—over a year before filing the FAC. And once Plaintiff read these

disclosures, she could have easily accessed the alleged tools on her computer. FAC ¶43 (recognizing that the software "can be observed using developer tools," which are available to any user). Thus, even if this Court finds that Plaintiff did not affirmatively agree to the Privacy Statement (which it should), it should at minimum hold that Sonesta's disclosures put Plaintiff on inquiry notice of the challenged practices. *Jolly*, 44 Cal.3d at 1111 ("A plaintiff need not be aware of the specific 'facts' necessary to establish the claim ..."); *Fox*, 35 Cal. 4th at 807 ("The discovery rule ... allows accrual … even if the plaintiff does not have reason to suspect the defendant's identity.").

Plaintiff cannot circumvent her obligations by now offering the conclusory claim that "the disclosures were deficient." Opp. at 8. As discussed above, they were not. But in any event, Plaintiff still must explain in the FAC why she could not have discovered claim earlier discovery despite reasonable diligence. *Schwartz v. Finn*, 2022 WL 636641, at *1 (9th Cir. Mar. 4, 2022); *Bitsakis v. JP Morgan Chase Bank*, 2012 WL 359283, at *3 (C.D. Cal. Feb. 1, 2012); *Vaccarino v. Midland Nat. Life Ins., Co.*, 2012 WL 1247137, at *5 (C.D. Cal. Apr. 13, 2012). Nor can she invoke the delayed-discovery rule simply by failing to read Sonesta's conspicuous disclosures. *DeBruyne v. Equitable Life Assur. Soc'y of U.S.*, 920 F.2d 457, 466 n.18 (7th Cir. 1990) ("[P]laintiffs cannot avoid the statute of limitations by possessing, but failing to read, the documents that would put them on inquiry notice."); *Meyer*, 868 F.3d at 79; *NYC Topanga, LLC v. Bank of Am.*, 2015 WL 4075844, at *6 (C.D. Cal. July 2, 2015).

Plaintiff's cited case, *Franklin v. Ocwen Loan Servicing, LLC*, 2018 WL 5923450, at *3 (N.D. Cal. Nov. 13, 2018), is readily distinguishable, as the disclosures there did not provide sufficient notice of the challenged practice. The *Franklin* plaintiff alleged the defendant recorded his sensitive banking information on several phone calls before the defendant's mid-call disclosure. The court held that "on calls where plaintiff received a recording disclosure, it is a reasonable inference that plaintiff was not aware that the recording had started before he heard the disclosure and gave consent." *Id.*; *see also Javier v. Assurance IQ, LLC*, 2023 WL 3933070, at *2 (N.D. Cal. June 9, 2023) (finding *Frankin*

inapplicable because "*Franklin* involved a series of fully recorded phone calls for which the plaintiff sometimes received no recording disclosure at all, or occasionally received a recording disclosure halfway through the call"). Here, by contrast, Sonesta notified Plaintiff of its privacy practices weeks before her alleged purchase when she signed up for Travel Pass, and again before completing her purchase. Mot. at 4–9; *Javier*, 2023 WL 3933070, at *2.

## V. SONESTA DID NOT VIOLATE CIPA §631(A)

In response to Sonesta's Motion, Plaintiff has dropped her claim to the extent it is based on the first prong of CIPA §631(a). Opp. at 12. The Court should dismiss any claim based on this prong. *In re Google Assistant Privacy Litig.*, 457 F.Supp.3d 797, 825–26 (N.D. Cal. 2020); *Matera v. Google Inc.*, 2016 WL 8200619, at *18 (N.D. Cal. Aug. 12, 2016).

Instead, Plaintiff anchors her claim on CIPA's third (aiding-and-abetting) prong, predicated on the second prong,[1] which prohibits "read[ing], or attempt[ing] to read or learn the contents or meaning of any message, report, or communication," or "us[ing], or attempt[ing] to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained." This claim fails for several reasons.

### A. The Party Exception Bars Plaintiff's §631 Claim

Plaintiff does not dispute that a party to a conversation cannot eavesdrop on its own conversations, or that it may use a tool to record the conversation. She also does not claim that the vendors use data from Sonesta for any other purpose than supporting Sonesta. Instead, Plaintiff asks the Court to avoid the party exception at this stage, or to find that Google, Hotjar, and Koddi fall outside the exception because they could, hypothetically, use data they collect for their own purposes. Both arguments fail.

[1] Plaintiff splits what Sonesta has called the "second prong" into the "second" and "third" prongs, and addresses aiding-and-abetting under a "fourth prong." Opp. at 12.

**1. The Court should not put off the determination of whether the party exception applies**

Plaintiff cannot satisfy *Twombly*/*Iqbal* without alleging facts to suggest that a third-party intercepted the alleged communication. *In re Vizio, Inc., Consumer Priv. Litig.*, 238 F. Supp. 3d 1204, 1228 (C.D. Cal. 2017) ("While Plaintiffs need not prove their theory of interception on a motion to dismiss, Plaintiffs must provide fair notice ...."). Because Plaintiff has failed to do so, this Court should follow other courts and dismiss Plaintiff's CIPA claims under the party exception. *Williams v. What If Holdings, LLC*, 2022 WL 17869275, at *4 (N.D. Cal. Dec. 22, 2022); *Byars v. Hot Topic, Inc.*, 656 F. Supp. 3d 1051, 1063–68 (C.D. Cal. 2023).[2]

**2. Plaintiff fails to distinguish her allegations from those rejected in *Graham v. Noom* and numerous subsequent decisions**

Plaintiff does not attempt to distinguish *Graham v. Noom, Inc.*, 533 F.Supp.3d 823 (N.D. Cal. 2021), nor does she even contend that her claim satisfied *Graham*. Instead, she asks the Court to disregard *Graham* and hold that she can allege wiretapping purely by claiming the vendor had the *capability* to engage in wiretapping, even if there is no indication they have done so. Opp. at 11.

*Graham* was not an outlier decision that expanded the party exception, but simply one of the first decisions to apply the decades-old exception to the context of online software. *In Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 607 (9th Cir. 2020) ("[t]he party exception must be considered in the technical context of this case."). In *Graham*, the vendor "provide[d] a software service that captures its clients' data, hosts it on

[2] In fact, in the cases Plaintiff cites to support her argument on this point, the courts actually dismissed, at least in part, the claims at the motion to dismiss stage. *E.g.*, *Yoon v. Lululemon USA, Inc.*, 549 F. Supp. 3d 1073, 1081 (C.D. Cal. 2021); *Valenzuela v. Super Bright LEDs Inc.*, 2023 WL 8424472, at *4–6 (C.D. Cal. 2023) (allegations were insufficient under *Javier*).

[its] servers, and allows the clients to analyze their data." 533 F. Supp. 3d at 836. The court applied the party exception after deciding the vendor was simply a "tool" that "allow[ed] Noom to record and analyze its own data in aid of Noom's business." *Id.* at 833–36. This reasoning stemmed from *Rogers v. Ulrich*, where the Court of Appeals held that a city employee did not violate CIPA by recording a phone conversation with a tape recorder. 52 Cal. App. 3d at 896–97.

*Graham* does not, as Plaintiff argues, rewrite the statute by creating a new requirement that the vendor must have actually misused the collected data. Instead, this is the only fair way to consider whether the vendor was operating as a third party. This threshold question of whether the software provider is, in effect, a tool used by the website to run its own website, or perhaps an agent of the e-commerce company, makes sense in the context of a website that requires numerous tools and services to operate. *See Licea v. Vitacost.com, Inc.*, 683 F. Supp. 3d 1118, 1123 (S.D. Cal. 2023) ("This Court agrees with those decisions holding that a website owner that engages a vendor to record website-based communications for the website owner's own purposes is not thereby aiding and abetting eavesdropping by a third party in violation of Section 631(a).") (citing *Graham*).

### 3. The Court should decline to follow *Javier* and its misreading of *Ribas*

Plaintiffs urge this Court to adopt the "capability of use" framework developed in *Javier v. Assurance IQ, LLC*, 649 F. Supp. 3d 891 (N.D. Cal. 2023), which determines whether a software provider acts as a third-party if it is "*capable* of using the recording for other ends." Put otherwise, *Javier* assumes that because a vendor may hypothetically be "capable" of using data for its own purposes, it must have engaged in illegal wiretapping. This reasoning erases from CIPA any requirement that the third-party vendor use the information in any kind of nefarious way, all while still providing $5,000 per violation in penalties.

The dangers of this approach cannot be understated. The vague question of "capability"—which appears nowhere in the statute—risks violating the constitutional

requirement that "a penal statute define the criminal offense with sufficient definiteness." *Kolender v. Lawson*, 461 U.S. 352, 357 (1983*); Warden v. Kahn*, 99 Cal.App.3d 805, 817 n.3 (1979) ("Since we are dealing with a penal statute, language so ambiguous should be interpreted in favor of the alleged violator."). **Sonesta is not aware of any law that criminalizes the mere capability of doing something.** (Imagine, for example, being liable for being capable of murder). Nor is an agency relationship destroyed simply because the agent *could* go rogue. In theory, any vendor that has access to data *could* misuse it. For example, does a company have a "capability" to misuse data if a contract prohibits it? What about if the data is kept on a separate server, but an employee could access that data and misuse it? What if software does not currently exist to misuse the data but it could be written fairly easily?

The "capability test" also ignores *Twombly/Iqbal*'s pleading principles, and Article III standing requirements, which protect defendants from hypothetical or speculative claims. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of … plausibility of 'entitlement to relief'"); *Lujan*, 504 U.S. at 560–61. Finally, Plaintiff's reading asks to make any person who possessed, but did not use, an eavesdropping device civilly liable to *anyone*, regardless of whether the accuser was affected by that possession. *Cf. Spokeo, Inc. v. Robins*, 578 U.S. 330, 338, 341 (2016).

Javier, and in turn Plaintiff, errs in misreading *Ribas v. Clark,* 38 Cal. 3d 355 (1985) to hold that a party to a communication (1) can violate §631 by "permit[ting] an outsider to tap his telephone or listen in on the call," and (2) cannot disseminate a conversation "to an unannounced second auditor" without the other party's consent. That language from *Ribas,* however, concerned a tariff exception not at issue here as applied to a third party "furtively ... eavesdropping on confidential communications." 38 Cal. 3d at 360–63. *Ribas* did not cast doubt on the party exception; in fact, it reaffirmed *Roger's* holding that "section 631 does not penalize the secret recording of a conversation by one of the *participants.*" 38 Cal. 3d at, 359–60 & n.3.

*Ribas* is inapplicable (just as it was in *Javier*). It did not involve the interpretation or application of the party exception, or even "recording" akin to a tape recorder or the technologies here. Instead, it involved claims against a third-party eavesdropper—a woman's lawyer—who allegedly listened in to eavesdrop on the woman's call with the husband during divorce proceedings, and then testified based on her memory of the conversation. *Id.* at 364; *see also id*. at 359 ("Section 631 was aimed at one aspect of the privacy problem--eavesdropping, or the secret monitoring of conversations by *third parties*.") (emphasis added); *id*. (citing with approval *Warden v. Kahn,* 99 Cal. App. 3d 805 (1979), which explained that §631, unlike §632, applies "only to eavesdropping by a third party and not to recording by a participant to a conversation."). It therefore does not apply to Plaintiff's §631 claims, which do not involve any third-party, and which involve a device similar to a tape recorder as opposed to a person's brute and unreliable recollection.

**3. Plaintiff's claim still fails under *Javier*.**

Regardless, Plaintiff fails to satisfy her own proposed "capability" test. Even under *Javier*, "a plaintiff still must have at least pled some non-conclusory factual allegations to support the use capabilities of the third-party software company involved." *Heiting v. Taro Pharms. USA, Inc.,* 2023 WL 9319049, at *4 (C.D. Cal. 2023) (dismissing claim where plaintiff conclusorily alleged the vendor "intercept[ed]" communications, "divert[ed] them" to its website, and "store[d] [user information] for its own purposes."). Here, as in *Heiting,* Plaintiff's allegations are "conclusory and do not allow for the inference that [any of the vendors have] the capability to use" the data. *Id.* She has "not adequately pled factual allegations to support [the vendors'] capabilities to function as anything other than a tape recorder, storing data for a party to this action." *Id.*; *Licea v. American Eagle Outfitters*, 659 F.Supp.3d 1072, 1085 (C.D. Cal. 2023); *In re Vizio, Inc., Consumer Priv. Litig.*, 238 F. Supp. 3d at 1228; *Byars*, 656 F. Supp. 3d at 1068; *Rodriguez*, 2024 WL 1223485, at *13–14 ("Plaintiff has not alleged any facts or cited any authority supporting her conclusory allegation[s].").

Plaintiff theorizes that these vendors use the collected data to generate reports for

Sonesta,[3] but the act of creating a report is irrelevant, as Plaintiff does not take the additional, crucial step of alleging that the vendors *can* (or, under *Graham*, actually do) use any reported information for purposes other than *furnishing* it *to Sonesta*. Similarly, Plaintiff claims the vendors "use" the collected the data to "improve" their "services," Opp at 12,[4] but the vague references to "services" appear to simply mean that the vendors use the data to improve services provided *to Sonesta*. *Heiting*, 2023 WL 9319049, at *4. Even under *Javier*, courts have repeatedly found no §631(a) liability where the defendant lacked "the capability to use the[] communications for any purpose other than *furnishing them*" to the party based on the specific facts alleged. *Yockey v. Salesforce, Inc.*, 2023 WL 5519323, at *5 (N.D. Cal. Aug. 25, 2023); *Valenzuela*, 2023 WL 8424472, at *8; *Swarts v. Home Depot, Inc.*, 689 F. Supp. 3d 732, 746 (N.D. Cal. 2023) ("Nowhere [does plaintiff] allege that … any other third party, can use the information obtained for any other purpose besides relaying it to Home Depot.").

**B. Plaintiff's Allegations of Duplicated Messages Are Insufficient to Constitute an Interception in Transit**

Plaintiff's claim under the second prong of §631(a) also fails because Plaintiff does not allege that the alleged communications were intercepted during transmission. Cal. Penal Code §631(a); *Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868, 878 (9th Cir. 2002) (the communication "must be acquired during transmission").

Other than conclusorily alleging that the interception occurred "in transit," Plaintiff does not identify any facts to suggest that her alleged communication with Sonesta was

[3] Opp. at 10–11; FAC ¶49 (Google "collect[ed] data … to create reports that provide insights" to Sonesta), ¶36 ("Hotjar generates comprehensive recordings that reflect[] user behavior on the website, which can then be analyzed further")*;* ¶50 (Koddi "processes [captured data] through a machine learning model, and generates [] recommendation[s]").

[4] FAC ¶67 ("Google can access and analyze the Analytics data … [to] improve [its] products and services…"), ¶63 (Hotjar can use collected data "to research, develop, modify, improve or support the services provided by Hotjar[,]"), ¶68 (Koddi can use collected data "to develop and improve Koddi's products and services[,]").

intercepted rather than duplicated and sent separately to the vendors. Opp. at 14 (citing Paragraph 51 as containing "detailed allegations showing her communications were intercepted 'in transit,'" when the paragraph merely describes duplication).[5]

Instead, the Opposition focuses on arguing why mere duplication is sufficient. But accessing a duplicated communication is not the same as eavesdropping the original communication. CIPA contemplates a single communication read on its way from point A to point B—not the alleged practice of sending a copy of the communication somewhere else. Specifically, it applies to third-parties who:

> willfully and without the consent of all parties to <u>the</u> communication [<u>singular</u>], or in any unauthorized manner, reads, or attempts to read, or to learn <u>the</u> contents or meaning of <u>any</u> message, report, or communication [<u>singular</u>] while <u>the same</u> <u>is</u> in transit or passing over any wire, line, or cable, or <u>is</u> being sent from, or received at any place within this state.

Plaintiff does not allege that any communication between Sonesta and Plaintiff was intercepted *at any point*: not when it was leaving the user's browser, not when it was crossing over any wire or otherwise in transit, and not when it was arriving at Sonesta's website. And regardless of when the interception occurs, sending a copy of a communication to a vendor does not implicate this prohibition, because it is not "the same" communication being sent between the parties of the communication.

The statutory language on which Plaintiff relies—"while . . . [the communication] is being sent from, or received at any place"—does not apply where, as here, the vendor allegedly received a separate communication. Instead, this language (written well before the Internet) concerns circumstances such as those in *Ribas*, discussed above, where an eavesdropper is secretly listening to a phone call—*i.e.*, the eavesdropper is still listening to

[5] Sonesta's Motion contained a helpful graphic depicting this distinction. Plaintiff clams that this graphic "misconstrues Plaintiffs' allegations," but does not explain why. This graphic is not "outside of the four corners of the complaint," as it is simply an illustration of Plaintiff's allegations. FAC ¶51 ("when a user communicates with [Sonesta's] Website, those communications are simultaneously and contemporaneously duplicated and sent to the [Vendors] at the same time as they are being sent to [Sonesta].").

"the same" communication "while" "it" is being sent or received. *Keurig Green Mountain, Inc.*, 674 F.Supp.3d at 758 (finding the word "while" to be the key word in the statute, and holding "Plaintiff's simultaneity claims are just too conclusory to survive"). Where, as here, a user's browser allegedly sends separate communications to the Vendors and to Sonesta, there is no interception, so CIPA's second prong does not apply.

### C. Plaintiff's Attempts to Broaden the Meaning of CIPA's Final Prong Make No Sense, and She Fails to State a Claim under It

The Court should reject Plaintiff's attempt to redefine of "aids, agrees with, employs, or conspires with" as meaning "simply enables." Opp. at 15–16. Numerous courts have required the third prong of §631(a) to require aiding-and-abetting, and this court should do the same. *Byars*, 656 F. Supp. 3d at 1066 ("the only possible basis for Defendant to be liable under Section 631(a) must be an *aiding and abetting* theory"); *Williams*, 2022 WL 17869275, at *4 (dismissing claim that defendant aided and abetted wiretapping). CIPA is a criminal statute and should not be read to prohibit "non-criminal conduct," like mere "enabling." Opp. at 15–16.

Plaintiff fails to allege the elements of aiding-and-abetting: that Sonesta allegedly (1) knew of the wrong (according to Plaintiff, the fact that vendors had the mere capability of misusing data) "and of [its] role in furthering it"; and (2) "substantially assisted in the wrong." *Leason v. Berg*, 927 F.2d 609 (9th Cir. 1991); *Rogers v. Hedgpeth*, 320 F. App'x. 815, 817 (9th Cir. 2009). As discussed above, the FAC does not allege any facts to suggest "the [vendors] used the intercepted information for [their] own purposes, beyond merely storing it." Opp. at 17 (citing to FAC ¶¶ 32–38, 48–50, 61–68). The cited paragraphs do not contain such facts; they simply quote the vendors' respective websites, which Plaintiff does not claim Sonesta ever read. And in fact, as shown above, *supra* §V.A, it was the tools provided by the vendors that assisted Sonesta, not the other way around.

Plaintiff does not allege facts to suggest Sonesta helped anyone engage in surreptitious wiretapping, as evidenced by the fact that it repeatedly disclosed the alleged practices—undermining any allegations of a potential wrong, of Sonesta's knowledge of it,

and of Sonesta's alleged role "substantially assisting" in it. And even if the Court considered this a close question, it should apply the rule of lenity in Sonesta's favor. *LVRC Holdings LLC v. Brekka*, 581 F.3d 1127, 1134–35 (9th Cir. 2009).

## VI. SONESTA DID NOT VIOLATE CIPA §632

Plaintiff does not contest that this cause of action is more appropriately directed to the vendors than to Sonesta. Mot. at 21. Nor does she point to anywhere in the FAC that she alleges that Sonesta (as opposed to the vendors) engaged in eavesdropping. Plaintiff's §632 claim should be dismissed on this basis.

### A. Plaintiff's Newly-Raised Aiding-and-Abetting Theory Under §632 is Inappropriate and Incorrect

In an ironic twist, Plaintiff alleges for the first time in her Opposition that Sonesta is subject to aiding-and-abetting liability under Cal. Penal Code §31. This is improper. Opp. at 17–18; *Provencio v. Vazquez*, 258 F.R.D. 626, 639 (E.D. Cal. 2009) ("Raising a completely new theory of liability [] in a brief in opposition to a motion to dismiss does not grant Defendant fair notice of Plaintiffs' claim or the grounds upon which it rests.").

Regardless, neither the FAC nor Plaintiff's Opposition identify facts suggesting that Sonesta knowingly helped a third-party engage in the conduct prohibited by §632(a), *i.e.*, using devices "to eavesdrop upon or record … confidential communications." (As discussed above and in Sonesta's Motion, Plaintiff does not adequately allege aiding-and-abetting under any other theory, either.) The FAC's vague "enabling" allegations (made with respect to a different section of CIPA) are readily distinguishable from the cases cited by Plaintiffs. *See Vera v. O'Keefe*, 791 F. Supp. 2d 959, 961, 963 (S.D. Cal. 2011) (alleging journalists conspired to secretly video and audio tape their visit with plaintiff, and which journalist wore the hidden camera to record the visit); *Vaccaro v. Altais*, 2023 U.S. Dist. LEXIS 191058, at *15 (C.D. Cal. Oct. 23, 2023) (alleging defendants "authorized and ratified" their vendor recording plaintiff's call without providing adequate notice because they failed to provide "adequate oversight or safeguards").

### B. Plaintiff Fails to Overcome the Presumption that She Had No Objectively Reasonable Expectation of Privacy

Plaintiff cannot satisfy the "reasonable expectation of privacy" requirement by reciting that she wanted her communications to be private (Opp. at 18)—especially given that she repeatedly agreed to Sonesta's privacy disclosures. Instead, courts consider whether any alleged privacy expectation was *reasonable*, which is a high bar for plaintiffs to meet in the online context. *Campbell v. Facebook Inc*., 77 F. Supp. 3d 836, 849 (N.D. Cal. 2014); *Swarts*, 689 F. Supp. 3d at 747. Plaintiff fails to plausibly show that there is anything "unique" about her "particular internet communications" with Sonesta that might overcome the presumption that Internet-based communications are not "confidential" within the meaning of §632. *In re Meta Pixel Healthcare*, 647 F.Supp.3d 778, 798-99 (N.D. Cal. 2022).[6]

Indeed, several courts have held that the information at issue here—*e.g.*, text entry and button clicks—is not confidential. *Rodriguez v. Google LLC*, 2021 WL 2026726, at *7 (N.D. Cal. May 21, 2021); *Revitch*, 2019 WL 5485330 at *3; *Yoon*, 549 F. Supp. 3d at 108183. Plaintiff's vague references to "guest records" should not alter this result, given that she does not identify *any* personal information that she claims was collected.

Nor can Plaintiff tether her claim to Civil Code §53.5. First, clicks on a hotel website, before any room is ever booked, is not a "guest record." Mot. at 22–23. Regardless, the statute allows companies to share guest records for "intended business purposes" if they are not "improperly disclosed." FAC ¶ 18 (quoting California S.B. 1194 (Sept. 27, 2018)). Sonesta's repeated disclosures readily trigger this exception.

---

[6] *Brown v. Google LLC*, 685 F. Supp. 3d 909, 937 (N.D. Cal. 2023) does not disturb this well-established presumption. *Brown* addressed Google's "Incognito" windows, which misrepresented to customers that their browsing activities would be private. 685 F. Supp. 3d at 937. Under these unique circumstances, "plaintiffs could have had a reasonable expectation of privacy over their private browsing." *Id.* at 939. Here, by contrast, not only did Sonesta not misrepresent its practices, but it explicitly outlined its practices and repeatedly obtained Plaintiff's consent to them.

### C. Plaintiff's Definition of a Recording Device is Overbroad and Would Render Practically all Software Illegal

Plaintiff insists that the remaining tools are "recording devices" and seems to suggest that any piece of software or computer program should also fall into this category. Opp. at 20–21. This interpretation would be overly broad, and utterly unwieldy. Given that CIPA does not define "device," and numerous courts have found the definition to exclude software, Mot. at 23 (citing cases),[7] at most, the statute is ambiguous on this point, in which case the rule of lenity would apply and favor Sonesta. *LVRC Holdings LLC*, 581 F.3d at 1134.

## VII. CONCLUSION

For the reasons above, Sonesta respectfully requests that the Court grant its Motion with prejudice.

Dated: September 23, 2024

Respectfully submitted,

*s/ Stephanie Sheridan*
STEPHANIE SHERIDAN (CA 135910)
MEEGAN B. BROOKS (CA 298570)
Benesch, Friedlander, Coplan & Aronoff LLP

Attorneys for Defendant
Sonesta International Hotels Corporation

[7] *E.g.*, *Potter v. Havlicek*, 2008 WL 2556723, at *8 (S.D. Ohio June 23, 2008) (software, on its own, cannot be a "device" under the Federal Electronic Communication Privacy Act); *Jacome v. Spirit Airlines Inc.*, 2021 WL 3087860, at *4–5 (Fla. Cir. Ct. June 17, 2021) (session replay software is not a "device" under Florida's wiretap statute).

**CERTIFICATE OF COMPLAINCE WITH L.R. 11-6.1**

The undersigned, counsel of record for Defendant Sonesta International Hotels Corporation, certifies that this brief contains 6,893 words which complies with the 7, 000-word limit set forth in L.R. 11-6.1.

Dated: September 23, 2024

Respectfully submitted,

*s/ Stephanie Sheridan*
STEPHANIE SHERIDAN (CA 135910)