UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | CV 24-2603-GW-SSCx | Date | October 4, 2024 |
| Title | *Kentoya Mitchell v. Sonesta International Hotels Corporation* | | |

| | |
|---|---|
| Present: The Honorable | GEORGE H. WU, UNITED STATES DISTRICT JUDGE |

| | | |
|---|---|---|
| Javier Gonzalez | None Present | |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| | |
|---|---|
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| None Present | None Present |

**PROCEEDINGS: IN CHAMBERS - TENTATIVE RULING ON DEFENDANT SONESTA INTERNATIONAL HOTELS CORPORATION'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT [26]**

Attached hereto is the Court's Tentative Ruling on Defendant's Motion [26] set for hearing on October 7, 2024 at 8:30 a.m.

:

Initials of Preparer JG

***Mitchell v. Sonesta Int'l Hotels Corp.***, Case No. 2:24-cv-02603-GW-(SSCx)
Tentative Ruling on Motion to Dismiss the First Amended Complaint

**I. Background**

This action began with the filing of the original Complaint in state court on February 26, 2024 before removal of the case to this Court on March 29, 2024. *See* Docket Nos. 1, 1-1. The First Amended Complaint ("FAC") filed by Kentoya Mitchell ("Plaintiff") on June 7, 2024 in this putative class action presents two claims for relief: 1) violation of the California Invasion of Privacy Act, Cal. Penal Code § 631(a)[1], and 2) violation of the California Invasion of Privacy Act, Cal. Penal Code § 632[2].[3] Sonesta International Hotels Corporation ("Defendant") has now moved to dismiss, invoking both Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) and raising a host of different arguments targeted to their desired end.

Generally-speaking, the action concerns Plaintiff's allegation that Defendant aids, employs, agrees with, or otherwise enables various third parties – who operate "tracking

---

[1] Penal Code Section 631(a) provides for various forms of punishment for:

> [a]ny person who, by means of any machine, instrument, or contrivance, or in any other manner, intentionally taps, or makes any unauthorized connection, whether physically, electrically, acoustically, inductively, or otherwise, with any telegraph or telephone wire, line, cable, or instrument, including the wire, line, cable, or instrument of any internal telephonic communication system, or who willfully and without the consent of all parties to the communication, or in any unauthorized manner, reads, or attempts to read, or to learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line, or cable, or is being sent from, or received at any place within this state; or who uses, or attempts to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained, or who aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned above in this section.

Cal. Pen. Code § 631(a).

[2] Penal Code Section 632(a) provides for various forms of punishment for:

> [a] person who, intentionally and without the consent of all parties to a confidential communication, uses an electronic amplifying or recording device to eavesdrop upon or record the confidential communication, whether the communication is carried on among the parties in the presence of one another or by means of a telegraph, telephone, or other device, except a radio.

Cal. Pen. Code § 632(a).

[3] The California Supreme Court has recognized a civil claim for violation of California's Invasion of Privacy Act, Penal Code §§ 630-637.2. *See Ribas v. Clark*, 38 Cal.3d 355, 359-62 (1985); *see also* 5 Witkin, Summary of California Law: Torts (11th ed.), § 14, at 118-20.

technologies" – to eavesdrop on communications containing sensitive and confidential information, without obtaining consent. *See* FAC ¶¶ 2, 20, 69. More-specifically, it involves Plaintiff's interactions with a website Defendant operates, sonesta.com, in the course of browsing and booking a hotel. *See id.* ¶ 3. Plaintiff seeks to represent a class she presently-defines as "all California residents who have accessed and navigated the Website while in California." *Id.* ¶ 76.

**II. Applicable Procedural Standards**

Under Rule 12(b)(6), a court must (1) construe the complaint in the light most favorable to the plaintiff, and (2) accept all well-pleaded factual allegations as true, as well as all reasonable inferences to be drawn from them. *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir.), *amended on denial of reh'g*, 275 F.3d 1187 (9th Cir. 2001); *Pareto v. F.D.I.C.*, 139 F.3d 696, 699 (9th Cir. 1998). The court need not accept as true "legal conclusions merely because they are cast in the form of factual allegations." *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003).

Dismissal pursuant to Rule 12(b)(6) is ordinarily proper only where there is either a "lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990); *Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1121-22 (9th Cir. 2008); *see also Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 561-63 (2007) (dismissal for failure to state a claim does not require the appearance, beyond a doubt, that the plaintiff can prove "no set of facts" in support of its claim that would entitle it to relief). However, in that respect, a plaintiff must also "plead 'enough facts to state a claim to relief that is plausible on its face.'" *Johnson*, 534 F.3d at 1122 (quoting *Twombly*, 550 U.S. at 570); *see also William O. Gilley Enters., Inc. v. Atlantic Richfield Co.*, 588 F.3d 659, 667 (9th Cir. 2009) (confirming that *Twombly* pleading requirements "apply in all civil cases"). A complaint does not "suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 556). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

In its consideration of a Rule 12(b)(6) motion, the court is generally limited to the allegations on the face of a complaint (including documents attached thereto), matters which are properly judicially noticeable, and "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading." *See Lee v. City of Los Angeles*, 250 F.3d 668, 688-89 (9th Cir. 2001); *Branch v. Tunnell*, 14 F.3d 449, 453-54 (9th Cir. 1994), *overruling on other grounds recognized in Galbraith v. County of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002). Nonetheless, "while a court must generally refrain from considering extrinsic evidence in deciding a 12(b)(6) motion, it may [also] consider documents on which the complaint 'necessarily relies' and whose 'authenticity . . . is not contested.'" *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1141 n.5 (9th Cir. 2003); *see Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006) ("A court may consider evidence on which the complaint 'necessarily relies' if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion."); *see also Steinle v. City & Cty. of S.F.*, 919 F.3d 1154, 1162-63 (9th Cir. 2019); *Northstar Fin. Advisors Inc. v. Schwab Invs.*, 779 F.3d 1036, 1042 (9th Cir. 2015) ("'[W]e may consider materials incorporated into the complaint . . . .'") (quoting *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010)).

A claim may be dismissed under Rule 12(b)(6) on the ground that it is barred by the applicable statute of limitations, but only when 'the running of the statute is apparent on the face of the complaint.'" *Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 969 (9th Cir. 2010) (quoting *Huynh v. Chase Manhattan Bank*, 465 F.3d 992, 997 (9th Cir. 2006)). In this respect, "'a complaint cannot be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts that would establish the timeliness of the claim.'" *Id.* (quoting *Supermail Cargo, Inc. v. United States*, 68 F.3d 1204, 1206 (9th Cir. 1995)).

Under Rule 12(b)(1), a defendant may bring a "factual" challenge to a federal court's subject matter jurisdiction. "In a factual challenge, the moving party 'introduc[es] evidence outside the pleadings' and seeks to have the existence of jurisdiction determined as a factual matter." *Jones v. L.A. Cent. Plaza LLC*, 74 F.4th 1053, 1056 n.1 (9th Cir.

2023) (quoting *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014)). "'Where the jurisdictional issue is separable from the merits of the case,' a court presented with such a factually-based motion to dismiss 'may consider the evidence presented with respect to the jurisdictional issue and rule on that issue, resolving factual disputes if necessary.'" *Id.* at 1057 n.2 (quoting *San Diego Cty. Credit Union v. Citizens Equity First Credit Union*, 65 F.4th 1012, 1028 (9th Cir. 2023)). "However, resolving an Article III standing issue under the guise of a Rule 12(b)(1) motion, rather than a summary judgment motion under Rule 56, may be inappropriate if those jurisdictional issues are 'intertwined with the merits.'" *Id.* "Discovery is necessary" on a Rule 12(b)(1) "factual" challenge, where "it is possible that the plaintiff can demonstrate the requisite jurisdictional facts if afforded that opportunity." *St. Clair v. City of Chico*, 880 F.2d 199, 201 (9th Cir. 1989).

## III. Analysis

### A. An Initial Winnowing

The Court will quickly narrow the scope of the arguments presented to it. First, several of Defendant's arguments are reliant on the Court taking into consideration particular facts that Defendant asserts are true and documentary material that it attaches to its counsel's declaration. For purposes of Rule 12(b)(6), Defendant *properly* argues[4] only that the Court may take judicial notice of these facts and materials. *See* Docket No. 26-1, at 4:23-27, 5:25-28, 11:24-26; Docket No. 26-2. In the Court's view, judicial notice would not be appropriate, and the Court does not make arguments for the parties that are not properly made in the papers.

A federal court may take judicial notice of "a fact that is not subject to reasonable dispute" if it "is generally known within the trial court's territorial jurisdiction" or "can be accurately and readily determined from sources whose accuracy cannot reasonably be

[4] To the extent Defendant argues *in its Request for Judicial Notice* that there *other* methods by which this Court could consider some or all of this material in connection with a Rule 12(b)(6) motion, Defendant has not included any such argument *in its memorandum of points and authorities* filed in support of its motion. Defendant may not sidestep the Court's limitations on the size of briefs, *see* C.D. Cal. L.R. 11-6.1 (setting a 7,000-word limit on memoranda of points and authorities), by sequestering additional argument in support of its motion in a Request for Judicial Notice where that argument actually has nothing to do with requesting "judicial notice." The additional argument contained in Defendant's Request for Judicial Notice would almost certainly, and very quickly, have taken Defendant above the applicable 7,000-word limit, considering that Defendant certified its Memorandum of Points and Authorities already contains 6, 854 words. *See* Docket No. 26-1, at 25:1-4.

questioned." Fed. R. Evid. 201(b)(1)-(2). The details of the commercial communications and transactions between Plaintiff and Defendant are not facts "generally known," and the Court has no way of knowing whether the screenshots of web pages Defendant has provided are "from sources whose accuracy cannot reasonably be questioned," especially to the extent they are asserted to reflect what Plaintiff confronted at the time she engaged in her transactions with Defendant. *See, e.g.*, *Bingham v. Holder*, 637 F.3d 1040, 1045 n.3 (9th Cir. 2011) ("The content of particular websites on a specified date in 2007 is not 'capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.'"); *Weinhoffer v. Davie Shoring, Inc.*, 23 F.4th 579, 584 (5th Cir. 2022) (concluding that district court erred in taking judicial notice of results produced by "Wayback Machine" "because a private internet archive falls short of being a source whose accuracy cannot reasonably be questioned as required by Rule 201"). Simply because the parties to a case do not dispute that something is true does not mean that the "something" is properly subject to *judicial notice*. *See* Wegner, Jones, Rosen, Jones, Wegner & Wegner, *Rutter Group Prac. Guide: Federal Civil Trials & Evidence* (The Rutter Group 2024), ¶ 8:827, at 8D-9 ("Courts may . . . take judicial notice of matters that are indisputable because they are capable of immediate and accurate verification through reliable sources (*e.g.*, almanacs, encyclopedias, etc.)."). These are, instead, evidentiary matters that should be explored through discovery, and if – after that process – they are in fact agreed-upon, they can be presented back to the Court in connection with an appropriate evidentiary motion. Many of Defendant's arguments simply presume that the Court can consider all of the material Defendant wants it to consider. As explained above, Defendant is wrong under the only properly-presented argument it has advanced.

That leaves the question of whether the Court should consider the material for purposes of Rule 12(b)(1). As Defendant has presented a "factual" Rule 12(b)(1) challenge,[5] the presumed answer is that the Court *can* consider such material. However, Defendant's Rule 12(b)(1) theory is that Plaintiff cannot satisfy Article III's causation

---

[5] To the extent Defendant presents a "facial" Rule 12(b)(1) challenge, as it asserts it also is doing here, *see* Docket No. 26-1, at 10:11-12, it has presented no reasoning whatsoever why Plaintiff's FAC does not "facially" satisfy Article III standing requirements.

requirement because any injury-in-fact "would have been self-inflicted" due to the purported fact that Plaintiff consented. Docket No. 26-1, at 1:22-24, 10:21-11:18.[6] This question is both plainly intertwined with the merits of Plaintiff's two claims – both Penal Code Section 631(a) and 632(a) make lack-of-consent an element[7] – and would be an issue that the Court believes Plaintiff should be entitled to take relevant discovery on before a decision is rendered on the question. Beyond that, it presents a distinctly-challenging basis to attempt to resolve on the pleadings.[8] *See, e.g.*, *Calhoun v. Google, LLC*, 113 F.4th 1141, 1147 (9th Cir. 2024) ("In determining consent, courts consider whether the circumstances, considered as a whole, demonstrate that a reasonable person understood that an action would be carried out so that their acquiescence demonstrates knowing authorization. If that user could have plausibly understood the disclosures as not disclosing that [the defendant] would engage in particular conduct, then the disclosures are insufficient to establish consent.") (omitting internal quotation marks and citations).

The Court also quickly dispenses with Defendant's assertion that Plaintiff's "claims" as to third parties Quantum Metric, Sentry, and CartStack "must be dismissed" because Plaintiff does not dispute that Defendant did not use their technologies during the relevant period. *See* Docket No. 32, at 1:4-6, 2:11-14. However, there is only one defendant in this action, and only two claims. There are no "claims" alleged against Quantum Metric, Sentry, and/or CartStack. Rule 12(b) only applies to "a claim for relief," and Rule 12(b)(6) allows a defendant to move to dismiss for "failure to state *a claim*." See Fed. R. Civ. P. 12(b)(6) (emphasis added).

Similarly, the Court rejects Defendant's request, in its Reply brief, to "dismiss

---

[6] Defendant also asserts that Plaintiff could not have been harmed by three particular third parties – *i.e.* Quantum Metric, Sentry, or CartStack – because Defendant did not use those third parties' services on its website when Plaintiff engaged in transactions thereon. *See* Docket No. 26-1, at 10:13-20. This would not eliminate Plaintiff's alleged injury-in-fact entirely because the FAC still alleges that there are three other third parties who allegedly provided Defendant services: *i.e.* Google LLC, Hotjar Ltd., and Koddi Inc.

[7] Indeed, Defendant itself admits that "[l]ack of consent is a key element to every cause of action" in the FAC. Docket No. 26-2, at 1:7-8; *see also* Docket No. 26-1, at 13:8-13; Docket No. 32, at 8:20-22.

[8] For example, *Clapper v. Amnesty International USA*, 568 U.S. 398 (2013), which Defendant relies upon in both its Opening and Reply briefs for the proposition that a plaintiff cannot create standing merely by inflicting harm upon herself, was a standing analysis conducted on appeal after the case had already proceeded to the summary judgment stage.

any claim based on" the "first prong" of Section 631(a). Docket No. 32, at 11:8-10. There is no "claim" in the FAC based on the "first prong" of Section 631(a). To the extent a party seeks to rid a complaint or an action of parts of the action that do not amount to a claim, there are other potential vehicles for that end: a motion to strike (if appropriate) or a motion for summary judgment, for instance.

B. Remaining Issues

The foregoing dispenses with a number of the issues Defendant has raised via its motion. In particular, the Court does not see how Defendant's arguments based on Plaintiff's purported consent can succeed without reliance on material or arguments that the Court has already explained it will not allow or consider on this motion.[9]

However, there are still other arguments presented by its Rule 12(b)(6) motion that are not dependent on material outside the four corners of the FAC.

*1. Statute of Limitations*

Defendant asserts that Plaintiff's claims are time-barred, and that this may be determined from the face of the June 7, 2024-filed FAC, because Plaintiff has alleged visiting Defendant's website in April 2023. *See* FAC ¶ 3. The theory, however, is that the time-bar applies because Plaintiff identified new third-party software vendors in the FAC that had not been identified in the original Complaint. *See* Docket No. 26-1, at 12:4-6. However, the case remains only as an action against Defendant. None of the purveyors of any software – either those alleged in the original Complaint, or those freshly-alleged in the FAC – are defendants in this action.

Defendant argues that Plaintiff cannot use the "relation back" doctrine to look to the original Complaint's filing date of February 26, 2024, because "Plaintiff brings theories based on entirely different technology" than that identified in the original Complaint and, thus, "the allegations in the two complaints 'involve totally different kinds of allegedly improper conduct, and investigation into one claim would not likely lead to investigation of the other.'" Docket No. 26-1, at 12:20-23, 13:2-3 (quoting *Rodriguez v. Airborne Express*, 265 F.3d 890, 897 (9th Cir. 2001)).

[9] Defendant briefly appears to argue that Plaintiff's allegation of lack of consent is not plausible under *Twombly*/*Iqbal*. The Court disagrees. Very few facts, if any, are necessary to make a plaintiff's assertion that he/she did not consent "plausible." It is an issue ripe, instead, for an evidentiary examination.

Plaintiff did not add any new claims or new parties in the FAC. As such, Defendant would have to explain why Plaintiff would need to rely on the relation-back doctrine *at all*. *See* Weil & Brown et al., *Cal. Prac. Guide: Civ. Pro. Before Trial* (The Rutter Group 2024), ¶ 6:730, at 6-209 (indicating that "relation back doctrine" may determine whether statute of limitations is valid defense "when the amendment corrects the name or identity of a named defendant," "when the amendment identifies 'Doe' defendants," "when the amendment alleges new claims," "when the amendment names new plaintiffs," or "when a new cross-complaint is filed") (emphases omitted); *see also* Fed. R. Civ. P. 15(c)(1)(A) ("An amendment to a pleading relates back to the date of the original pleading when . . . the law that provides the applicable statute of limitations allows relation back."); Stevenson & Fitzgerald, *Rutter Group Prac. Guide: Federal Civ. Pro. Before Trial* (The Rutter Group 2024), ¶¶ 8:1606-07 (indicating that, in diversity cases, the initial question is whether the amended complaint would relate back under state law). Even if she does, "[u]nder the relation-back doctrine, an amendment relates back to the original complaint if the amendment: (1) rests on the same general set of facts; (2) involves the same injury; and (3) refers to the same instrumentality." *Pointe San Diego Residential Cmty., L.P. v. Procopio, Cory, Hargreaves & Savitch, LLP*, 195 Cal.App.4th 265, 276 (2011). As otherwise expressed,

> "[t]he prevailing rule with respect to actions involving parties designated by their true names in the original complaint is that, if an amendment is sought after the statute of limitations has run, the amended complaint will be deemed filed as of the date of the original complaint provided recovery is sought in both pleadings on the same general set of facts." Cases applying this relation back rule have made it clear that "it is the sameness of the facts rather than the rights or obligations arising from those facts that is determinative."

*Amaral v. Cintas Corp. No. 2*, 163 Cal.App.4th 1157, 1199 (2008). In contrast, "the doctrine will not apply if . . . 'the plaintiff seeks by amendment to recover upon a set of facts entirely unrelated to those pleaded in the original complaint.'" *Pointe San Diego*, 195 Cal.App.4th at 277 (quoting *Stockwell v. McAlvay*, 10 Cal.2d 368, 375 (1937)). Moreover, "in applying the relation-back analysis, courts should consider the 'strong policy in this state that cases should be decided on their merits.'" *Id.* (quoting *Idding v. N. Bay Constr. Co.*, 39 Cal.App.4th 1111, 1114 (1995)).

Even if the Court were to look only to federal relation-back principles, the question governing relation-back analysis would be whether the FAC "asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out – or attempted to be set out – in the original pleading." Fed. R. Civ. P. 15(c)(1)(B). A court is to "consider whether the original and amended pleadings share a common core of operative facts so that the adverse party has fair notice of the transaction, occurrence, or conduct called into question." *Martell v. Trilogy Ltd.*, 872 F.2d 322, 325 (9th Cir. 1989). In *Martell*, the Ninth Circuit approved of the Fifth Circuit's earlier statement that:

> "[l]imitation is suspended by the filing of a suit because the suit warns the defendant to collect and preserve his evidence in reference to it. When a suit is filed in federal court under the Rules, the defendant knows that the whole transaction described in it will be fully sifted, by amendment if need be . . . ."

*Id.* at 326 (quoting *Barthel v. Stamm*, 145 F.2d 487, 491 (5th Cir. 1944)).

At least the Court's initial view here is that a change in the identification of the software implicated does not change the fact that Plaintiff complains about the same set of facts, and the same transaction, occurrence or conduct. However, the Court need not reach a final determination on this point for purposes of this lawsuit just yet. It is enough to observe that, to this point, Defendant is not even operating in the same relation-back ballpark as set out by the foregoing principles. If it believes that, even under these principles, it may prevail on a statute of limitations defense, it is free to argue that later in the case. For now, however, the Court rejects Defendant's statute of limitations argument, without needing to assess Plaintiff's attempt to rely on a "delayed discovery" rule.

*2. Stating a Claim Under Penal Code Sections 631(a) and/or 632*

Defendant's remaining – non-consent-based – arguments relate to whether or not Plaintiff has successfully stated a claim under California Penal Code Sections 631(a) and/or 632.

a. <u>Section 631(a)</u>

i) <u>"Party Exception"</u>

Defendant first contends that Plaintiff is only attempting to allege a violation of the final clause of Section 631(a), but that a violation of that final clause requires a

violation of one of the preceding clauses in Section 631(a). It asserts that Plaintiff has not plausibly alleged a violation of one of those earlier clauses.

Defendant begins this argument by asserting that there is a "party exception" to Section 631 liability, meaning that a plaintiff must allege that a *third* party engaged in the alleged wiretapping. *See In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 607 (9th Cir. 2020). Defendant identifies the software vendors as the third parties who it believes actually fall within the "party exception" here. Specifically, Defendant believes that "the FAC concedes that the vendors' alleged 'tracking technologies' are merely tools used by [Defendant] for [Defendant's] own web development, analytics, and marketing purposes," and that the vendors are "[a]t most . . . agents operating at [Defendant's] behest." Docket No. 26-1, at 17:2:5. Thus, the vendors "are merely an extension of [Defendant] that facilitate [Defendant's] offerings to its own customers," and therefore fall under the "party exception." *Id.* at 17:5-7.

Defendant acknowledges that some courts have declined to apply the party exception where the alleged third-party eavesdropper *used* the information *for its own benefit*, but asserts that Plaintiff alleges no facts in support of that theory here. Instead, in Defendant's reading of the allegations (citing FAC ¶¶ 62, 91), Plaintiff has only provided either vague/conclusory allegations of such "use . . . for their own purposes," or has simply asserted that the vendors have the *capability* of such use.

Plaintiff first responds to this particular argument by positing that the "party exception" cannot be determined at this stage, but is instead a question of fact for the jury that should not be decided at the pleading stage. Plaintiff also believes that the cases that read a "use" requirement into an *exception* to the "party exception" have added a requirement that is not actually present in the statute, but that a mere *capability* of use is sufficient.

The Court takes a somewhat different approach to this issue, but winds up at effectively the same result as Plaintiff – that the issue is not appropriate for resolution on this motion. The Ninth Circuit has described the so-called "party exception" as "an exemption from liability." *Facebook, Inc. Internet Tracking*, 956 F.3d at 607. In other words, it does not appear to be an *element* of Plaintiff's Section 631(a) claim, but instead effectively an affirmative defense. Defendant cites *Facebook, Inc. Internet Tracking* for

the proposition that "[t]o allege a violation of § 631, Plaintiff must first allege that a third party – as opposed to one of the Parties to the communication – engaged in the alleged wiretapping." Docket No. 26-1, at 16:21-23.[10] Considering the "exemption from liability" language quoted above, the Court believes Defendant has mis-read that decision. Whether use, or mere capability of use, is necessary is therefore not an issue that presently concerns the Court.

ii) "Telephone Wire, Line, Cable, or Instrument"

Defendant also argues that Plaintiff does not allege use of a "telephone wire, line, cable, or instrument," and that Plaintiff cannot state a Section 631(a) claim for that reason also. Plaintiff responds that this issue is a "red herring" because that is not the "prong" of Section 631(a) that the FAC alleges was violated. Defendant does not pick back up on the issue in its Reply, so the Court assumes that this "herring" is not just "red," but dead.

iii) "In Transit"

In addition, Defendant argues that Plaintiff's Section 631(a) claim is flawed because Plaintiff does not plausibly allege that communications were intercepted "in transit or passing over a wire, line, or cable." Defendant argues that any such interception – even in the Internet age – has to occur *during* transmission, not once it has reached its destination. Instead, says Defendant (citing FAC ¶ 51), Plaintiff has alleged only that the website user's communications are *duplicated* and sent to the vendors *at the same time* they are sent to Defendant, and – in Defendant's view – duplication is not interception.

On this point, Plaintiff begins by noting that Section 631(a) relates not just to messages, reports, or communications that are "in transit," but also to those that are "being sent from, or received at any place within this state." Cal. Pen. Code § 631(a); *see also Ribas*, 38 Cal.3d at 359-60. Beyond that, Plaintiff directs the Court to decisions that have determined that the simultaneous duplication and interception of communications is

[10] Defendant makes a similar (but *slightly* different) assertion in its Reply brief. *See* Docket No. 32, at 12:3-4 ("Plaintiff cannot satisfy *Twombly*/*Iqbal* without alleging facts to suggest that a third-party intercepted the alleged communication.") (citing *In re Vizio, Inc., Consumer Priv. Litig.*, 238 F.Supp.3d 1204, 1228 (C.D. Cal. 2017)). For the same reasons expressed above, this variation (reliant on a district court decision that pre-dated *Facebook, Inc. Internet Tracking*) does not advance the ball in persuading this Court that this issue is something Plaintiff was required to affirmatively address in her pleading.

sufficient to meet the "in transit" description.[11] Plaintiff therefore believes that the FAC has already provided all that is needed in this regard, citing to FAC ¶¶ 30-32, 36-44, 49-51, and 54-60.

In its Reply, with respect to Plaintiff's point about the statute also covering communications that are "being sent from, or received at any place within this state," Defendant simply asserts that this language "does not apply where, as here, the vendor allegedly received a separate communication." Docket No. 32, at 17:19-21. But it provides no reason (other than a citation to a district court decision that Defendant contends found the word "while" to be the key word in the statute), based in statutory interpretation or otherwise, why this is the obviously-correct conclusion.

In *Ribas*, the California Supreme Court already indicated that a complaint survives a pleadings-based challenge and states a *prima facie* violation of Section 631 because it alleges that eavesdropping occurred either while the communication was "in transit" or was "being sent from" or "received at" a place within California. *See* 38 Cal.3d at 359-60. There is no indication in *Ribas* that the word "while" was a key focus of the California Supreme Court's analysis. Even if "while" carries as much freight as Defendant would like, the Court is unclear why, exactly, a simultaneous duplication would not satisfy that requirement. In short, the Court does not find Defendant's argument, based on a statutory interpretation that no California state court appears to have adopted, to be sufficiently-convincing at this point. The Court therefore rejects Defendant's "in transit" argument.

iv) <u>Aiding & Abetting</u>

Finally – at least as to Plaintiff's Section 631(a) claim – Defendant asserts that Plaintiff has not pled the elements necessary for an aiding-and-abetting claim. Part of that argument is based on the consent issue mentioned above that the Court cannot consider/resolve on this motion. Even beyond that, Defendant finds fault with Plaintiff's allegations because they only include the assertion that Defendant operates the website in question, integrated the third parties' "wiretaps" into the website, and "allowed" those

[11] At least one of those cases, the Ninth Circuit's decision in *In re Facebook, Inc. Internet Tracking Litigation*, 956 F.3d 589, 608 (9th Cir. 2020), made the comment in question in connection with deciding the "party exception" issue, not whether simultaneous duplication/communication satisfied an "in transit" pleading requirement.

third parties to "surreptitiously collect interactions." Defendant finds these allegations too vague or conclusory to allege *knowing* "aiding and abetting."

On this last Section 631(a) argument, Plaintiff rejects the contention that the last prong of Section 631(a) addresses "aiding and abetting," such that the last prong reaches mere "enabling" of another's wrongdoing. At least some courts have agreed with this reading (and a *plain* reading of the statute certainly is consistent with that point). *See, e.g.*, *Cousin v. Sharp Healthcare*, 681 F.Supp.3d 1117, 1129-30 (S.D. Cal. 2023). Plaintiff asserts that the FAC certainly alleges at least that. *See* FAC ¶¶ 23, 42. Even if Plaintiff were required by Section 631(a)'s fourth prong to allege that Defendant aided-and-abetted, she believes she has done so by virtue of the allegations in paragraphs 32-38, 48-50, and 61-68 of the FAC.

In its Reply, Defendant merely points to other courts that have read Section 631(a)'s final prong to cover aiding-and-abetting. Beyond that, it asserts that Section 631(a) "is a criminal statute and should not be read to prohibit 'non-criminal conduct,'" while also invoking the rule of lenity.[12] As to the sufficiency of any aiding-and-abetting allegations, Defendant contends that the cited paragraphs from the FAC "simply quote the vendors' respective websites, which Plaintiff does not claim [Defendant] ever read." Docket No. 32, at 18:22-24.

In light of the uncertainty in the case law whether Section 631(a)'s reference only to "aids" actually means "aids and abets" – bringing along with it all the requirements that a plaintiff must meet to properly allege that level of involvement – the Court is not prepared to rule at this stage that any alleged failure by Plaintiff to sufficiently allege "aiding and abetting" precludes Plaintiff from stating a Section 631(a) claim. The Court therefore rejects this argument as a basis to dismiss Plaintiff's first claim as well.

b. Section 632

i) No Eavesdropping/Recording

As for the FAC's Section 632 claim, Defendant first contends that Plaintiff has

---

[12] This is the first time the rule of lenity has been invoked on the motion, meaning Plaintiff never had an opportunity to address the issue/argument. The same is true as to Defendant's second mention of the rule in connection with its argument in its Reply on the proper understanding of "recording device," discussed *infra*. *See* Docket No. 32, at 21:5-9.

not alleged "eavesdropping" or "recording" by anyone – not Defendant, and not Defendants' third-party vendors. Plaintiff responds that she has alleged eavesdropping by the third party vendors, and that Defendant can be liable on a claim under this statute by virtue of aider/abettor liability. *See* Cal. Pen. Code § 31. To the extent Defendant suggests in its Reply brief that this cause of action "is more appropriately directed to the vendors" than to Defendant and the claim "should be dismissed on this basis," Docket No. 32, at 19:5-8, that is not a proper reason for dismissing a claim. However, as to Defendant's comment on the "ironic twist" that Plaintiff relies upon aiding-and-abetting in her Opposition, the Court agrees that because this was not alleged in the FAC,[13] Plaintiff may not rely upon it in opposition to this motion. Whether or not there are allegations in the FAC that could be said to successfully support such a nonexistent theory, therefore, is beside the point. Plaintiff will have to explain why her second claim should not be dismissed for at least this reason.

ii) "Confidential Communications"

Noting that Section 632 only applies to "confidential communications," *see, e.g.*, *Kight v. CashCall, Inc.*, 200 Cal.App.4th 1377, 1395 (2011), Defendant also argues that Plaintiff cannot demonstrate a reasonable expectation of privacy. Plaintiff must plead this as part of the Section 632 claim. *See Faulkner v. ADT Sec. Servs., Inc.*, 706 F.3d 1017, 1020 (9th Cir. 2013). Part of Defendant's argument for why it believes Plaintiff has not done/cannot do so, however, is based on the consent/disclosures issue mentioned above that the Court cannot consider/resolve on this motion. The Court also rejects Defendant's other arguments for why it believes Plaintiff's Section 632 claim is deficient in this respect.

"The California Supreme Court has concluded that a conversation is confidential within the meaning of Section 632 'if a party to that conversation has an objectively reasonable expectation that the conversation is not being overheard or recorded.'" *Faulkner*, 706 F.3d at 1019 (quoting *Kearney v. Salomon Smith Barney, Inc.*, 39 Cal.4th

[13] *See* FAC ¶¶ 97-108. The FAC never uses the terms "abet," "abets," or "abetting," and only uses the term "aid" (or some variant thereof) in association with allegations tracking the language of Section *631*, with the single brief exception in FAC ¶ 105 of asserting that the third parties are "aided by Defendant." Considering Plaintiff's emphasis elsewhere that "to aid" does not mean "to aid and abet," the Court does not find, in this single reference, a sufficient toehold for an aiding-and-abetting theory in support of her Section 632 claim.

95, 117 n.7 (2006)). "The standard of confidentiality is 'an objective one defined in terms of reasonableness.'" *Id.* (quoting *Frio v. Superior Court*, 203 Cal.App.3d 1480, 1488 (1988)). "The existence of a reasonable expectation of privacy, given the circumstances of each case, is a mixed question of law and fact." *Facebook, Inc. Internet Tracking*, 956 F.3d at 601.

Defendant asserts that Internet-based communications are simply *presumed* not "confidential" within the meaning of Section 632. It then contends that Plaintiff cannot attempt to overcome that perceived presumption by relying upon California Civil Code § 53.5,[14] noting that Section 53.5 does not create a private right of action, that Plaintiff has only vaguely referred to "guest records," and, in any event, Section 53.5 simply requires that guest records be "used for the intended business purposes," and Plaintiff has not alleged that Defendant did something else – *i.e.*, other than "intended business purposes" – with them.

The Court agrees with Plaintiff that Section 632 makes no exception on its face for communications over the Internet, or in the "Internet Age," meaning that there is no requirement that Plaintiff allege something "unique" about her particular Internet communications in order to make them private/confidential. *Cf. Kight*, 200 Cal.App.4th at 1391 (rejecting trial court's conclusion that monitoring did not constitute eavesdropping under Section 632 because only a corporate defendant and the plaintiff borrower were parties to the conversation, explaining in part that "[t]he statute . . . contains no exceptions applicable when a business monitors a telephone conversation

---

[14] Under California Civil Code § 53.5, no "hotelkeeper" or "owner or operator" of a hotel, "who offers or accepts payment for rooms, sleeping accommodations, or board and lodging, or other similar accommodation," can "disclose, produce, provide, release, transfer, disseminate, or otherwise communicate, except to a California peace officer, all or any part of a guest record orally, in writing, or by electronic or any other means to a third party without a court-issued subpoena, warrant, or order." Cal. Civ. Code § 53.5(a). "Guest record," for purposes of Section 53.5, "includes any record that identifies an individual guest, . . . [or] customer, including, but not limited to, their name, social security number or other unique identifying number, date of birth, location of birth, address, telephone number, driver's license number, other official form of identification, credit card number, or automobile license plate number." *Id.* § 53.5(c). There is an exception for private businesses who provide "business records containing a guest's or passenger's name, address, credit card number, or driver's license number" to a "third-party service provider, if required, for the sole purpose of effectuating financial payment, including, approving or processing negotiable instruments, electronic fund transfers, or similar methods of payment," from a "guest" for a "good or service," and for private businesses who "provid[e] business records to a third-party service provider that the private business contracts with for business-related services." *Id.* § 53.5(i); *see also id.* § 53.5(f) (defining "third-party service provider").

even if the monitoring is for a legitimate business purpose" and concluding that "[v]iewing the statute as it is written, there is no basis for concluding a corporation cannot be held liable when it directs one of its employees to secretly monitor a telephone conversation between a customer and another employee"). The California Legislature is perfectly capable of adjusting the reach of the statute for the modern era if it believes it is appropriate to do so. Once beyond that point, the Court also agrees with Plaintiff that she has certainly alleged that she had a reasonable basis to believe that her communications were "confidential" (irrespective of whether or not they fall within the definition of "guest records" under California Civil Code § 53.5), *see* FAC ¶¶ 3, 24, 29, 69, 102-104, 106, and thus concludes that whether or not she actually had an objectively-reasonable expectation in this regard is a question better-assessed at a later stage of the litigation.[15] The Court therefore rejects this argument as a basis to dismiss Plaintiff's Section 632 claim.

iii) "Electronic Amplifying or Recording Device"

Defendant's final Section 632 argument is that Plaintiff has not alleged that Defendant used an "electronic amplifying or recording device," a concept that Defendant posits does not extend to software. But, again, the Court agrees with Plaintiff – there is nothing in Section 632 that excludes software from serving as an "electronic amplifying or recording device." *See, e.g.*, *Yockey v. Salesforce, Inc.*, _ F.Supp.3d _, No. 22-cv-09067-JST, 2024 WL 3875785, *7-8 (N.D. Cal. Aug. 16, 2024); *Doe v. Meta Platforms, Inc.*, 690 F.Supp.3d 1064, 1080 (N.D. Cal. 2023). If the California Legislature believes software should be excluded from that concept, it knows how to write legislation. The parade-of-horribles Defendant envisions – such as the assertion, in Defendant's Reply brief, that "[t]he resulting hits to efficiency and to web-users' experience would dwarf any 'consumer protection' benefit," Docket No. 32, at 2:4-6[16] – is a reason for enactment of policy, not judicial resolution-out-of-fear.

[15] The Court also sees no need in Section 632(a)'s language for a plaintiff to demonstrate that her expectation of privacy is supported by the existence of a separate legislative protection. "Confidential communication," within the meaning of Section 632, means – with certain exceptions not applicable here – "any communication carried on in circumstance as may reasonable indicate that any party to the communication desires it to be confined to the parties thereto." Cal. Pen. Code § 632(c).

[16] *See also* Docket No. 32, at 13:24-14:11.

## IV. Conclusion

The Court invites Plaintiff to attempt to explain why she should not have to amend her second claim for relief considering her attempt to rely, in her Opposition to this motion, on an aiding-and-abetting theory that does not appear to be present in the FAC. If she cannot convince the Court in this regard, the Court will likely grant Defendant's motion to dismiss as to Plaintiff's second claim, with leave to amend, but deny that motion with respect to the first claim for relief.